79 P.3d 465 (2003)
119 Wash.App. 133
In re the CUSTODY OF Celeste Marie OSBORNE, DOB: 4/04/96,
Laree E. Osborne, Appellant,
v.
Tawnya Osborne, Mother and Kenneth Osborne, Jr., Father, Respondents.
No. 50956-0-I.
Court of Appeals of Washington, Division 1.
November 17, 2003.
*466 John Russell Hickman, Attorney At Law, Tacoma, WA, for Appellant.
Sally A. Lanham, Mikkelborg Broz Wells & Fryer PLLC, Margaret Doyle Fitzpatrick, Margaret Doyle Fitzpatrick & Assoc., Seattle, WA, for Respondents.
KENNEDY, J.
One year after she agreed to entry of a parenting plan that provided significant visitation to her child's paternal great-grandmother Laree Osborne, Tawnya Osborne filed notice of her intent to relocate with the child, as required by Washington's Child Relocation Act, and proposed a modified parenting *467 plan that provided for no visitation with the great-grandmother. Laree Osborne, who meets the conditions required by RCW 26.09.540, filed an objection to relocation of the child. Rather than conducting a hearing as directed by RCW 26.09.520, the trial court overruled the great-grandmother's objection solely on the basis of the United States Supreme Court's decision in Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2059, 147 L.Ed.2d 49 (2000). The trial court concluded that Troxel rendered RCW 26.09.540 unconstitutional, and ruled that the great-grandmother simply had no remedy under the Act. We reverse and remand.

FACTS
Tawnya Osborne and Kenneth Osborne, Jr., were married in 1992, and had one daughter, Celeste Marie Osborne, who was born on April 4, 1996. When Tawnya and Kenneth divorced in December 1998, their agreed parenting plan provided that Celeste would primarily reside with Kenneth, and limited her residential time with Tawnya to certain vacations and holidays. Kenneth and Celeste, who was then two years old, were residing with Kenneth's grandmother, Laree Osborne, at the time of the dissolution. Celeste herself had been residing with her great-grandmother since she was six-months old.
On January 4, 2000, Tawnya petitioned for modification of the parenting plan based on a substantial change in circumstances. Specifically, she asserted in her petition that Kenneth had progressively restricted her contact with Celeste, had neglected his parenting duties due to serious drug and alcohol dependency, had turned over his parenting responsibilities to his grandmother, Laree Osborne, with whom Celeste was living, and, with his family, had "engaged in a persistent and escalating campaign to alienate the child from her mother." Clerk's Papers at 390. Following a threshold hearing on February 17, 2000, a court commissioner concluded that the petition, if proved, contained adequate cause to modify the parenting plan, entered a temporary parenting plan providing visitation for Tawnya, referred the case to Family Court Services for a parenting evaluation, and ordered Kenneth to complete a drug and alcohol evaluation.
On March 28, 2000, Kenneth moved out of his grandmother's home, leaving Celeste in her care.
On April 14, 2000, Laree filed a nonparental custody petition under RCW 26.10.030, seeking custody of her great granddaughter, Celeste. According to Laree's petition, Celeste had been living with Laree since October 1996, Kenneth had abandoned his parenting responsibilities altogether, and Celeste had had only sporadic contact with her mother, both prior to and following the dissolution of the parents' marriage. Kenneth failed to respond to Laree's petition and was eventually defaulted out of the third-party custody action. Tawnya responded, and, following hearings on May 31 and June 9, 2000, a court commissioner ruled that Laree's third-party custody petition could proceed. The commissioner entered a temporary parenting plan providing that Celeste would reside primarily with Tawnya, but spend Wednesday evenings and weekends with Laree. The temporary parenting plan limited Kenneth's contact with Celeste.
On September 13, 2000, the trial court consolidated Laree's petition for custody with Tawnya's petition to modify the original parenting plan, and set a trial date of March 5, 2001. The court also transferred the consolidated matter to Family Court Services for an additional parenting evaluation.
As a result of the parenting evaluator's recommendations, Laree and Tawnya entered into an agreed final parenting plan incorporating most of those recommendations. On March 5, 2001, the trial court entered the agreed parenting plan, which designated Tawnya as the parent with whom Celeste would reside the majority of the time, and provided that Celeste would spend alternate weekends, every Wednesday evening to Thursday evening, and certain vacations with Laree. The agreed parenting plan provided supervised visitation for Kenneth, subject to his compliance with various conditions. The agreed parenting plan specifically referenced Washington's Child Relocation Act, and contained the provisions required to *468 be included in parenting plans by RCW 26.09.490.
A year and a day later, on March 6, 2002, Tawnya filed notice of intent to relocate with Celeste, along with a proposed modification of the existing parenting plan that deprived Laree of any visitation with the child. On March 29, 2002, Laree objected to the relocation, moved for a temporary order restraining the relocation, requested the court to appoint a guardian ad litem for Celeste, and requested that the existing parenting plan remain in place. Kenneth did not file an objection to the proposed relocation of the child.
At a hearing on May 8, 2002, Commissioner Hollis Holman asked the parties, "[I]n light of the Troxel[[1]] casewhat authority does this court have to enforce [a parenting plan] awarding third party visitation?" Report of Proceedings 5/8/02 at 2. Following Laree's statement that she was entitled to object to the relocation under RCW 26.09.540, Tawnya argued that (1) RCW 26.09.540 may be unconstitutional under Troxel v. Granville, (2) the fact that the parenting plan was agreed rather than decided at trial on the merits undermined the court's ability to enforce it, and (3) absent a finding that Tawnya was an unfit parent, Laree had no right, following Troxel, to object to the relocation.
Concluding that "the court has no authority to award" any third party visitation, the commissioner stated, "I am going to overrule the [great-grandmother's] objection." Report of Proceedings 5/8/02 at 9. In response to Laree's question, "Are you finding that RCW 26.09.540 does not apply in this particular case?" the commissioner stated, "Correct that it has since been basically over-ruled by the United States Supreme Court." Report of Proceedings 5/8/02 at 10. The commissioner signed a written order denying Laree's motion for the appointment of a guardian ad litem, and granting Tawnya's motion for a temporary order permitting the relocation stating, "Based upon Troxel v. Granville, there is a likelihood that on final hearing the court will approve the intended relocation of the child." Clerk's Papers at 254. The commissioner also signed a temporary parenting plan that did not provide visitation for Laree, but allowed Kenneth supervised visits with Celeste, subject to conditions.
At a revision hearing on July 16, 2002, Judge Patricia Clark heard argument, stayed "the Commissioner's ruling ... that the parenting-plan is void under Troxel," and continued the matter pending a written opinion. Report of Proceedings 7/16/02 at 17. On July 22, 2002, Judge Clark ruled:
The court had the authority to sign off on an agreed parenting [plan], pursuant to a 3rd party custody petition and modification petition, providing for visitation by the grandmother. Pursuant to the relocation statute the grandmother received appropriate notice[;] however under Troxel she has no remedy. Therefore, this court has no basis for interfering with the mother's decision to relocate.
Clerk's Papers at 291.
Laree appeals.[2]

ANALYSIS
Since June 8, 2000, Washington's Child Relocation Act, codified as RCW 26.09.405.560, has provided notice requirements and standards for relocating children who are the subject of court orders regarding visitation or residential time.[3]
*469 Under the Act, courts have the authority to allow or disallow relocation of the child. RCW 26.09.420; In re Marriage of Grigsby, 112 Wash.App. 1, 6, 57 P.3d 1166 (2002). A parent with whom the child resides the majority of the time, and who intends to relocate with the child, must notify every other person entitled to residential time or visitation with the child under a court-ordered parenting plan. RCW 26.09.430. A nonrelocating parent or another party having court-ordered visitation with the child may file an objection to the relocation of the child. RCW 26.09.480. However, the effect of third-party objections is limited by the following provision:
A court may not restrict the right of a parent to relocate the child when the sole objection to the relocation is from a third party, unless that third party is entitled to residential time or visitation under a court order and has served as the primary residential care provider to the child for a substantial period of time during the thirty-six consecutive months preceding the intended relocation.
RCW 26.09.540. It is undisputed that Laree meets the conditions contained in this subsection of the Act, in that she had been granted visitation rights under a court order and had served as Celeste's primary residential care provider for 15 of the 36 consecutive months preceding the intended relocation.
Following a timely objection by a party entitled to object, the Act provides for a hearing under RCW 26.09.520:
Basis for determination.
The person proposing to relocate with the child shall provide his or her reasons for the intended relocation. There is a rebuttable presumption that the intended relocation of the child will be permitted. A person entitled to object to the intended relocation of the child may rebut the presumption by demonstrating that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon the following factors. The factors listed in this section are not weighted. No inference is to be drawn from the order in which the following factors are listed:
(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
(2) Prior agreements of the parties;
(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention; and
(11) For a temporary order, the amount of time before a final decision can be made at trial.
RCW 26.09.520.
Laree contends that the trial court erred by denying her a hearing under RCW 26.09.520, and by overruling her objection to *470 the relocation of Celeste solely on the basis that Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2059, 147 L.Ed.2d 49 (2000) renders RCW 26.09.540 unconstitutional. Laree is correct.
The Child Relocation Act addresses all of the concerns that caused the Troxel court to find an entirely different third-party visitation statute unconstitutional as applied in that case, and thus passes constitutional muster here.
In Troxel, 530 U.S. at 65, 120 S.Ct. 2054, the United States Supreme Court considered whether RCW 26.10.160(3) violates the Federal Constitution.[4] RCW 26.10.160(3) provides:
Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.
A plurality of the Troxel Court held that the statute was unconstitutional as applied to Tommie Granville and her family because, in considering the grandparents' petition for visitation, the trial court placed on "the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters," thereby "directly contraven[ing] the traditional presumption that a fit parent will act in the best interest of his or her child." Troxel, 530 U.S. at 69, 120 S.Ct. 2054, citing Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). "In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." Troxel, 530 U.S. at 69-70, 120 S.Ct. 2054.
The United States Supreme Court did not adopt the Washington State Supreme Court's determination that RCW 26.10.160(3) (as well as former RCW 26.09.240)[5] was facially unconstitutional because the Due Process Clause requires a showing of harm or potential harm as a condition precedent to granting nonparental visitation. Troxel, 530 U.S. at 73, 120 S.Ct. 2054; In re Custody of Smith, 137 Wash.2d 1, 20, 969 P.2d 21 (1998) ("Short of preventing harm to the child, the standard of "best interest of the child" is insufficient to serve as a compelling state interest overruling a parent's fundamental rights."). Although the Washington Supreme Court recognized "that in certain circumstances where a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause severe psychological harm to the child,"[6] the court was concerned that RCW 26.10.160(3) and former RCW 26.09.240 lacked a "threshold requirement of a finding of harm to the child as a result of the discontinuation of visitation," and failed to "require the petitioner to establish that he or she has a substantial relationship with the child." In re Smith, 137 Wash.2d at 20-21, 969 P.2d 21. The Child Relocation Act does contain these requirements. See RCW 26.09.520; .540.
Troxel and Smith involved third-party attempts to establish a parenting plan granting them visitation rights. The relocation statute applies only after a parenting plan granting such rights has been entered by court order. RCW 26.09.405(1).[7] And unlike the statutes at issue in Troxel and Smith, RCW 26.09.540 explicitly limits the third parties whose objections to relocation of the child require a hearing to those with a substantial relationship with the child, as evidenced by residential or visitation rights under a court *471 order and a recent and substantial history as a primary residential care provider.
Rather than contravening the traditional presumption that a fit parent will act in the best interests of the child, as did the statutes at issue in Troxel and Smith, the relocation statute establishes a rebuttable presumption that the relocation of the child will be allowed. Thus, the Act both incorporates and gives substantial weight to the traditional presumption that a fit parent will act in the best interests of her child. The burden of overcoming that presumption is on the objecting party, who can only prevail by demonstrating that the detrimental effect of the relocation upon the child outweighs the benefit of the change to the child and the relocating person. RCW 26.09.520.
Moreover, the relocation statute provides specific guidance for trial courts considering orders restraining or permitting relocation of the child. Rather than containing a general statement of the "best interests of the child" standard as in the statutes examined in Troxel and Smith, RCW 26.09.520 contains eleven specific factors for the trial court to consider at a hearing to determine whether relocation of the child will be permitted.
Thus, the relocation statute expressly addresses all of the concerns that caused the Smith court to rule that the third party visitation statutes there at issue were facially unconstitutional, and that caused the Troxel court to rule that one of those statutes, RCW 26.10.160(3), was unconstitutional as applied to Ms. Granville and her family.
Nevertheless, the trial court ruled, in effect, that Troxel rendered RCW 26.09.540 facially unconstitutionalthat is to say, that the statute provides no remedy to Laree Osborne, and by implication, provides no remedy to any other third party who, as does Laree, meets the conditions set down in that subsection. Thus, contrary to Tawnya's argument on appeal, the revision court's ruling cannot properly be understood as holding only that that the Relocation Act is unconstitutional as applied to Tawnya, Celeste, and Laree. Indeed, the court did not consider the facts of this case before ruling that Troxel "overruled" RCW 26.09.540, and thereby denied Laree any remedy under the Act. Instead, by summarily overruling Laree's objection to relocation of the child, the court refused to allow the act to be applied at all.
But regardless of whether the court actually intended to rule that RCW 26.09.540 is facially unconstitutional, or only to rule that it would be unconstitutional if it were to be applied in this case, the ruling is erroneous. Because the Relocation Act contains none of the fundamental constitutional defects that caused the United States Supreme Court to find RCW 26.10.160(3) unconstitutional as applied to Tommie Granville and her family in Troxel, and because it contains none of the defects that caused our own State Supreme Court to find former RCW 26.09.240 facially unconstitutional in Smith, the trial court can only have reached the conclusion it did by construing Troxel to mean that until a parent is found to be unfit, her decisions regarding third-party visitation are final and unassailableno matter how much harm her decision might do to the child.
That is not the holding of the Troxel plurality. To the contrary, Justice O'Connor wrote:
The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests. More importantly, it appears that the Superior Court applied exactly the opposite presumption.
530 U.S. at 69, 120 S.Ct. 2054. The plurality went on to state: "And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Id. at 70, 120 S.Ct. 2054. And finally, the plurality observed that Ms. Granville had not entirely cut off visitation between her children and their grandparentsshe merely offered less time than the grandparents had previously enjoyed. Thus, Troxel was not a case in which court intervention was required in order for there to be any grandparent visitation at all. Id. at 71-72, 120 S.Ct. 2054.
Indeed, it would defy logic to conclude that a parent must be shown to be unfit before a court can properly intervene in that parent's *472 decision regarding third-party visitationfor if the parent were to be proved to be unfit the court would remove the child from her care altogether, not merely review her visitation decision for purposes of determining whether it causes detriment to the child. See Smith, 137 Wash.2d at 16, 969 P.2d 21 (both parens patriae power and police power provide the state with the authority to act to protect children lacking the guidance and protection of fit parents of their own).
The Relocation Act is not a third-party custody statute like RCW 26.10.030, which requires proof that the child is not in the custody of either of her parents or that the parents are unfit. Rather, the Act requires proof that the decision of a presumptively fit parent to relocate the child, thereby interfering with residential time of a parent or visitation time with a third party that a court has previously determined to serve the best interests of the child, will in fact be harmful to the childand in fact, so harmful as to outweigh the presumed benefits of relocation to the child and relocating parent. This kind of parental decisionmaking has long been recognized to justify exercise of parens patriae or police power. Smith, 137 Wash.2d at 18, 969 P.2d 21 (state may intrude upon integrity of the family where parental decision seriously conflicts with the physical or mental health of the child).
A party asserting that a statute is unconstitutional must, by argument and research, persuade the court that there is no reasonable doubt that the statute violates the Constitution. Island County v. State, 135 Wash.2d 141, 146-47, 955 P.2d 377 (1997). This is becausealthough the final decision regarding constitutionality of a statute must lie with the courtscourts start with the assumption that the Legislature, which is a coequal branch of government that is sworn to uphold the Constitution, has indeed considered the constitutionality of its enactments. Id. at 147, 955 P.2d 377. Tawnya has not met her burden. We are not persuaded that RCW 26.09.540 is unconstitutional, facially or as it ought by its terms to have been applied in this case. To the contrary, we are persuaded that the Legislature carefully considered and overcame the constitutional defects in the third-party visitation statute that was addressed by both the Troxel and Smith courts. We reverse the trial court's ruling that RCW 26.09.540 is unconstitutional under Troxel.
Accordingly, because Laree met the requirements of RCW 26.09.540, the Act required the trial court to hold a hearing as provided by RCW 26.09.520 to determine whether or not Tawnya would be permitted to remove Celeste over Laree's objection.
Although Laree seeks reversal of the trial court's orders, reinstatement of the March 5, 2001, parenting plan pendente lite, and remand for a proper hearing under RCW 26.09.520, she recognizes both that Tawnya has already removed Celeste to her new location, and that considerable time has elapsed while this case has been on appeal. Although Tawnya does not argue that the case is moot, Laree acknowledges that we might consider the case "technically moot" for these reasons. We do not consider the case moot, in that even at this late date we certainly could grant the relief that Laree requests. But we also recognize that, as a practical matter, conditions are not the same as they were in July 2002 when the trial court entered its order overruling Laree's objection.[8] Tawnya was permitted to relocate the child and the parties' briefs indicate that she did so. Celeste, who was born in April of 1996, is now 7 years old. We assume that she was promptly enrolled in her new school following the move and that she is now attending her second year of school at the new location. Depending upon the evidence that surfaces following our remand, the trial court might very well conclude that requiring that the child be returned now would only add to and not alleviate any harm *473 to the child that may have resulted from permitting her removal without benefit of a hearing under RCW 26.09.520.
The record reflects that Laree did not file a proposed parenting plan that would have revised her visitation schedule in the event that Tawnya were to be permitted to relocate the child. Instead, she asked that the request to relocate the child be denied and that the current parenting plan remain in place. RCW 26.09.480 prescribes the form of an objection to relocation of the child or to the relocating parent's proposed revised visitation schedule: "The objection shall be in the form of: (a) A petition for modification of the parenting plan pursuant to relocation; or (b) other court proceeding adequate to provide grounds for relief." RCW 26.09.480(1). Laree's objection seems to have assumed that if Tawnya were not permitted to relocate the child, she would herself elect to remain so that the existing parenting plan logically would remain in place.[9]
Given the fact that Celeste was actually relocated over a year ago and the practical considerations that could cause the trial court to conclude, following our remand, that requiring the child to be returned at this late date would only exacerbate and not alleviate any harm that may have already been done to the child, we direct that Laree be permitted, if she desires to do so, to amend her objection to add a proposed revised visitation schedule that would both accommodate the move that has already taken place and permit Laree to exercise visitation with the child during such school holidays and summer vacation times as may appear reasonable in all the circumstances as they exist at the time of the next hearing. If Laree so elects, she should amend her objection within 30 days following our remand.
Reversed and remanded, either for a hearing under RCW 26.09.520, or for consideration of a revised parenting plan to accommodate both the move that has already taken place and Laree's preexisting court-ordered visitation rights, if Laree elects to amend her objection to include such a proposed plan.
AGID and BECKER, JJ., concur.
NOTES
[1] Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[2] Although Laree purports to appeal the rulings of both the court commissioner and the revision court, it is Judge Clark's order, and not that of the court commissioner, which is the appealable order in this case. See State v. Hoffman, 115 Wash.App. 91, 101, 60 P.3d 1261 (2003) (Once the superior court makes its decision on revision, the appeal is from the superior court's decision, not that of the court commissioner).
[3] The Legislature specifically stated that it intended to supersede our Supreme Court's decisions in In re Marriage of Littlefield, 133 Wash.2d 39, 940 P.2d 1362 (1997), and In re Marriage of Pape, 139 Wash.2d 694, 989 P.2d 1120 (1999). Laws of 2000, ch. 21, § 1. In Littlefield, the court held that a parent must be allowed to relocate a child unless the relocation would harm the child; in Pape, the court held that trial courts considering relocation must presume that a child's best interests require the primary placement to remain intact. See In re Marriage of Grigsby, 112 Wash.App. 1, 7, 57 P.3d 1166 (2002), citing Littlefield, 133 Wash.2d at 55, 940 P.2d 1362 and Pape, 139 Wash.2d at 715, 989 P.2d 1120.
[4] "Specifically, we are asked whether § 26.10.160(3), as applied to Tommie Granville and her family, violates the Federal Constitution." Troxel, 530 U.S. at 65, 120 S.Ct. 2054.
[5] Prior to the 1996 amendments thereto, RCW 26.09.240 provided:

"The court may order visitation rights for a person other than a parent when visitation may serve the best interest of the child whether or not there has been any change of circumstances.
A person other than a parent may petition the court for visitation rights at any time.
The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."
[6] In re Smith, 137 Wash.2d at 20, 969 P.2d 21.
[7] "The provisions of RCW 26.09.405 through 26.09.560 ... apply to a court order regarding residential time or visitation with a child[.]"
[8] We recommend that counsel in future child relocation appeals utilize the procedures for requesting accelerated review that are provided by RAP 17.4 and RAP 18.12. RCW 26.09.560 requires the trial court to grant priority to child relocation hearings on its motion calendars and trial dockets. The same policies favoring speedy resolution of disputes regarding child relocation at the trial court level justify utilizing the procedures that are available to obtain accelerated review on appeal.
[9] The trial court may not admit evidence on the issue of whether the parent desiring to relocate will actually do so if not permitted to relocate the child as well, until the court has ruled whether relocation of the child will be permitted or restrained. See RCW 26.09.530. If the court restrains removal of the child, the parent who desired to relocate may say, in effect, "Oh, never mindI won't move either." In that event, no parenting issues remain, absent some independent grounds for modification of the existing plan. See Grigsby, 112 Wash.App. at 15-16, 57 P.3d 1166 (after trial court ruled that relocation of children would not be permitted and mother announced that she would not relocate without the children, trial court erred in modifying parenting plan absent grounds to do so independent of the proposed relocation itself).