[No. 30452-0-II.   Division Two.   July 7, 2004.]

*In the Matter of the Parentage of* R.F.R.

RUBEN D. RAMIREZ, *Appellant*, v. LISA HOLLAND, *Respondent*.

*John S. Mills*, for appellant.
*Howard Comfort III*, for respondent.

BRIDGEWATER, J. — Ruben D. Ramirez appeals a court order permitting Lisa Holland to relocate to Indiana with their

child, R.F.R., under the parental relocation statutes found at chapter 26.09 RCW. We hold that the trial court did not abuse its discretion in determining that Lisa was the parent entitled to the presumption in favor of relocation. We also hold, following the rationale of *In re Custody of Osborne*, 119 Wn. App. 133, 79 P.3d 465 (2003), that Ruben has not met his burden of showing that the statute violated his due process rights. We affirm.

Lisa Holland and Ruben Ramirez began living together in San Bernardino, California in 1989. Their child, R.F.R., was born in July 1993. At some point Ruben became physically abusive to Lisa. Domestic violence charges were filed against him in 1996 and again in 1998. Ruben was convicted of assault in 1998 and sentenced to 32 days in jail and 36 months' probation.[1]

In July of 2000, Lisa and R.F.R. moved to Washington to live with Lisa's stepfather.[2] Lisa began working at Ruby Tuesday's restaurant and attending Clover Park Technical College. In November 2000, she met Shan Peters and the two began dating. Peters worked at the Ruby Tuesday's corporate offices in Chicago and was part of a team overseeing the Washington franchises. Lisa saw Peters when he was here on business; she also visited him in Chicago. In March 2001, Lisa and R.F.R. moved out of Lisa's stepfather's house to live with Shelby Burke, a friend from work.

In June of 2001, Ruben moved to Washington after completing the terms of his probation in California, and he moved into his own apartment. Lisa generally worked from 2 to 10 P.M. and Ruben worked the night shift. The two would take turns caring for R.F.R., but they soon began to have conflicts when transferring R.F.R. back and forth.

On December 14, 2001, Lisa moved pro se to modify the parenting schedule, but no parenting plan or schedule had ever been filed. On January 11, 2002, Ruben filed pro se a

---

[1] He later successfully completed a 52-week anger management course.

[2] The parties opinions differed on whether Lisa's move to Washington was the end of their relationship.

petition to establish parentage, but paternity had already been established in San Bernardino County, California in 1995. On February 7, 2002, both parties appeared pro se before the Pierce County Superior Court. The court appointed a guardian ad litem (GAL), placed R.F.R. with Lisa, and restrained both parties from taking R.F.R. out of state.

On April 26, 2002, Lisa told the GAL that she planned to move to Indiana to live with Shan Peters. The GAL advised Lisa of Ruben's right to object to such a move and suggested that she file a notice of relocation.

On May 7, the court denied Lisa's request to relocate with R.F.R. The court order stated that in the event that Lisa did move, "the child will finish the school year [in Washington] and remain with the father pending further review." Clerk's Papers (CP) at 85. Apparently, Lisa contemplated remaining in Washington at that point, but the GAL advised Lisa it would be better for her to "establish" herself in Indiana.[3] 2 Report of Proceedings (RP) (Mar. 25, 2003) (Shelby Burke) at 9. Lisa relocated to Granger, Indiana, near South Bend, leaving R.F.R. with his father.

On October 25, 2002, Lisa, now represented by counsel, moved to obtain temporary custody of R.F.R. and submitted a proposed parenting plan. A court commissioner again denied her motion on November 21, pending resolution of the issue at trial under the parental relocation statutes.

The March 12, 2003 GAL report, while stating that R.F.R. would "likely do well in either parent's care," recommended placement with Ruben. CP at 186. After trial, the court ruled orally that Lisa was the parent "with whom the child reside[d] the majority of the time" under the relocation statute. RP (Mar. 31, 2003) at 3. The court then stated,

> Based on the testimony presented in this case, I find that Lisa Holland was that parent. The testimony supports the conclusion that Lisa was the primary care giver during the time that she and Ruben . . . lived in California with their son.

---

[3] Later the GAL told the paralegal for Lisa's attorney that she "didn't see any reason why [R.F.R.] wouldn't be able to relocate to Indiana with [Lisa]." 2 RP (Mar. 25, 2003) (Tanya Hamilton) at 6.

> Ms. Holland moved to Washington with [R.F.R] in July 2000 . . . [w]hile [Ruben] wanted to move to Washington at that time as well, he could not due to his probation.
>
> . . . [H]e did move to Washington in June 2001. Since the beginning of the 2001-2002 school year, the parents worked out child care arrangements to avoid the necessity of hiring others to provide the child care.

RP (Mar. 31, 2003) at 3-4. The court then determined that based on the statutory factors in RCW 26.09.520, Ruben had not overcome the rebuttable presumption to permit relocation by the parent "with whom the child resides a majority of the time,"[4] and it permitted R.F.R. to relocate with Lisa in August 2003, after he finished the school year and spent part of the summer with Ruben. Ruben appeals.

## I. "PERSON WITH WHOM THE CHILD RESIDES A MAJORITY OF THE TIME"

Ruben contends that the trial court abused its discretion in determining that Lisa was the parent entitled to the presumption of relocation.

■ The parental relocation act governs the trial court's decision on whether to allow a parent with primary custody to relocate his or her child. *See* RCW 26.09.405-.560. Under the act, courts have the authority to allow or disallow relocation based on an overall consideration of the best interests of the child. *In re Marriage of Grigsby*, 112 Wn. App. 1, 7, 57 P.3d 1166 (2002).

RCW 26.09.430 requires a person "with whom [a] child resides a majority of the time" to provide notice to interested persons if he or she intends to relocate. If an interested party objects, the person seeking to relocate the child may not do so without a court order. RCW 26.09.480(2). Upon such objection, the superior court must conduct a fact-finding hearing, at which there is a rebuttable presumption favoring the relocation. RCW 26.09.520. This presumption may be rebutted by a showing that the detrimental effect of relocation will

---

[4] *See* RCW 26.09.430.

outweigh the benefits of relocation to the child and the relocating person, based on 11 factors.[5] RCW 26.09.520(1)--(11). After the hearing, the superior court has the authority "to allow or not allow a person to relocate the child." RCW 26.09.420.

We review the trial court's decision for abuse of discretion. *In re Marriage of Horner*, 114 Wn. App. 495, 501 n.30, 58 P.3d 317 (2002), *review granted*, 149 Wn.2d 1027 (2003). Abuse occurs when the trial court's discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). *See also In re*

---

[5] The factors are:

(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

(2) Prior agreements of the parties;

(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520. *See also* RCW 26.09.530 ("In determining whether to permit or restrain the relocation of the child, the court may not admit evidence on the issue of whether the person seeking to relocate the child will forego his or her own relocation if the child's relocation is not permitted or whether the person opposing relocation will also relocate if the child's relocation is permitted.").

*Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); *In re Marriage of Ricketts*, 111 Wn. App. 168, 171, 43 P.3d 1258 (2002). A trial court's decision is "manifestly unreasonable" if it is outside the range of acceptable choices given the facts and the applicable legal standard. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

Here, the court carefully addressed the RCW 26.09.520 factors on the record. But Ruben disputes the court's finding that Lisa was the parent entitled to the presumption of relocation under RCW 26.09.430.

■ When there is an existing parenting plan, the parent who is entitled to the presumption of relocation under RCW 26.09.430 is more easily determined. Here, however, there was no parenting plan in place, and RCW 26.09.430 is silent as to the relevant time period for determining who is the parent "with whom the child resides a majority of the time."

At the time the trial court made its determination, Lisa was living in Indiana, and R.F.R. had been living with Ruben in Washington. But more significantly, when Lisa filed her notice of intent to relocate, a superior court commissioner had ordered "[c]hild resides with mother." CP at 69.

Moreover, sufficient evidence supports the court's finding that R.F.R. resided a majority of the time with Lisa. *See Horner*, 114 Wn. App. at 502. Both parties cared for R.F.R. in California, but based on Lisa's trial testimony, there was evidence supporting the court's finding that Lisa was the primary caregiver in California.[6] In 2000, Lisa moved with R.F.R. to Washington, and Ruben was not able move to Washington until a year later. Then, after Ruben moved to Washington, R.F.R. spent time with each parent. Because there was sufficient evidence for the court's determination that Lisa was the parent entitled to the presumption in favor of relocation, the trial court did not exercise its

---

[6] *See, e.g.*, 1 RP (Mar. 24, 2003) at 11 ("I knew he was doing drugs. I knew he drank a lot. So you know I—he had people come in at all hours. So I figured he was just out [in the garage] partying and I was in the house with the baby.").

discretion on untenable grounds or for untenable reasons. *See Junker*, 79 Wn.2d at 26.

The trial court did not abuse its discretion in determining that Lisa was the parent entitled to the presumption of relocation under the statute and in permitting relocation.

## II. SUBSTANTIVE DUE PROCESS

Ruben next contends that the presumption under RCW 26.09.520 (that the person with whom the child resides the majority of the time will be permitted to relocate) violates his substantive due process rights, particularly his fundamental right to the care and control of his child.

A party asserting that a statute is unconstitutional must persuade the court that there is no reasonable doubt that the statute violates the constitution. *Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998); *Osborne*, 119 Wn. App. at 147. Although the final decision regarding constitutionality of a statute lies with the courts, this court assumes that the legislature has considered the constitutionality of its enactments. *Osborne*, 119 Wn. App. at 147.

The due process clause of the Fourteenth Amendment " 'guarantees more than fair process.' " *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (O'Connor, J., writing for plurality) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)). The clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel*, 530 U.S. at 65 (quoting *Glucksberg*, 521 U.S. at 720). Parents have a fundamental liberty interest in the care and custody of their minor children. *Troxel*, 530 U.S. at 65;[7] *Wisconsin v. Yoder*, 406

---

[7] In a challenge to Washington's third-party custody statute (permitting any person to petition for visitation rights at any time and authorizing the court to grant visitation based on a "best interests" standard), the United States Supreme Court plurality found a constitutional violation of parents' substantive due process rights to direct the education and upbringing of their children *as applied* (*Troxel*, 530 U.S. at 67-69), whereas the Washington court had found a *facial*

U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *In re Dependency of J.B.S.*, 123 Wn.2d 1, 12, 863 P.2d 1344 (1993); *In re Custody of R.R.B.*, 108 Wn. App. 602, 610, 31 P.3d 1212 (2001), *review granted*, 145 Wn.2d 1033 (2002).

▮▮ Recently, in *Osborne*, 119 Wn. App. 133, Division One examined a parent's substantive due process challenge to the parental relocation act in the context of a third party's objection to parental relocation. The court held that the third party (a great-grandmother who had been residing with the child) was entitled to a hearing on her objection.[8] The trial court found the third party notification requirement unconstitutional, but the appellate court reversed, stating:

> Rather than contravening the traditional presumption that a fit parent will act in the best interests of the child, as did the statutes at issue in *Troxel* and [*In re Custody of*] *Smith*, [137 Wn.2d 1, 20, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57 (2000)], the relocation statute *establishes* a rebuttable presumption that the relocation of the child will be allowed. Thus, the act both incorporates and gives substantial weight to the traditional presumption that a fit parent will act in the best interests of her child. The burden of overcoming that presumption is on the objecting party, who can prevail only by demonstrating that the detrimental effect of the relocation upon the child outweighs the benefit of the change to the child and the relocating person. RCW 26.09.520.

*Osborne*, 119 Wn. App. at 144.

Thus, the relocation act requires proof that the decision of a presumptively fit parent to relocate with the child (thereby interfering with residential time of a parent or a third party that a court has previously determined to serve the best interests of the child) will in fact be so harmful to a child as to outweigh the presumed benefits of relocation to

violation (*In re Custody of Smith*, 137 Wn.2d 1, 20, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57 (2000)).

[8] A non-relocating parent or another party having court-ordered visitation with the child may file an objection to the relocation of the child. *See* RCW 26.09.480, .540.

the child and relocating parent. *Osborne*, 119 Wn. App. at 146-47. This is because the State has a parens patriae right and responsibility to intervene to protect the child when parental actions or decisions seriously conflict with the physical or mental health of a child. *See Smith*, 137 Wn.2d at 18-19 (suggesting that the State may intrude on the integrity of the family where parental decision seriously conflicts with the child's physical or mental health).

Here, Ruben has not met his burden of showing that the statute violates his substantive due process rights. Ruben cites no authority directly supporting his claim. And *Osborne* suggests that the State's ability (and therefore the objecting parent's ability) to prevent the relocation of the custodial parent is limited by the right of the relocating parent (i.e., the parent entitled to the presumption because that parent is the one with whom the child has resided for a majority of the time) to care for the child in the manner in which he or she sees fit. In this situation, the trial court was required to intervene and necessarily choose between the parents' competing interests.

Because Ruben has not shown a violation of his due process rights, and the court did not abuse its discretion in determining that Lisa was the person entitled to the presumption of relocation, we affirm.

Affirmed.

HOUGHTON and HUNT, JJ., concur.