70

*In the Matter of the Marriage of* MICHAEL MOMB, *Appellant,*
and CARLA RAGONE, *Respondent.*

72

*Mary E. Schultz* and *Kathryn W. Zimmerman*, for appellant.

*David J. Crouse*, for respondent.

¶1 THOMPSON, J.[*] — When Michael Momb and Carla Ragone divorced in 1992, Ms. Ragone was awarded primary custody of the couple's daughter, Bailey. Mr. Momb moved for a change of placement for Bailey and was awarded primary custody in 2002. One year later, Mr. Momb gave notice that he intended to move Bailey to Browns Valley, South Dakota. Ms. Ragone filed an objection. The court denied Mr. Momb's request for relocation. Mr. Momb contends the trial court erred. He asserts the relocation statutes are facially unconstitutional and unconstitutional as applied. He also contends the relocation statutes violate the equal protection clause, the commerce clause, the right to privacy in family matters, and the freedom to travel as protected by the due process clause. We deny Ms. Ragone's motion for a stay and we affirm the decision of the trial court.

## FACTS

¶2 When Mr. Momb and Ms. Ragone divorced in 1992, Ms. Ragone was awarded primary residential placement of the parties' daughter, Bailey Momb. Mr. Momb moved for a change of placement in 2001. After a contested trial, Mr. Momb was awarded primary custody in 2002. At the time of the trial, Ms. Ragone was residing in Keizer, Oregon, and Mr. Momb was residing in Spokane.

¶3 Approximately one year later, Mr. Momb gave notice under the relocation statutes that he intended to move Bailey to Browns Valley, South Dakota. Mr. Momb stated that he wished to relocate for business reasons and family reasons; Mr. Momb's wife, Judy, had a home in Browns

---

[*] Judge Philip J. Thompson is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Valley and was now living there with her children. Mr. Momb also felt that Browns Valley would provide a safer environment for Bailey.

¶4 Ms. Ragone filed an objection to Mr. Momb's relocation request and asked the court to restrain the relocation. Ms. Ragone also requested primary residential placement of Bailey. In April 2004, Ms. Ragone moved to Spokane. In May, the court appointed a guardian ad litem. In August, Mr. Momb requested temporary relocation so that Bailey could start school in Browns Valley. The court denied this motion. Earlier, Mr. Momb had made two other unsuccessful requests for temporary relocation prior to trial.

¶5 Following an evidentiary hearing, the court denied Mr. Momb's request for relocation. The court entered findings pursuant to RCW 26.09.520.

## ANALYSIS

### 1. Are the relocation statutes[1] facially unconstitutional?

¶6 A statute is presumed to be constitutional. The party asserting that a statute is unconstitutional must persuade the court that there is no reasonable doubt that the statute violates the constitution. *Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998).

¶7 RCW 26.09.187 sets forth the criteria for the entry of a permanent parenting plan upon the dissolution of a marriage. As part of the parenting plan, primary residential placement is established. If the custodial parent wishes to relocate, the nonrelocating parent has the opportunity to object to the relocation of the custodial parent. RCW 26-.09.480. The custodial parent may be precluded from relocation by a showing that the detrimental effects of the relocation outweigh the benefit of the change to the child and the relocating parent. RCW 26.09.520.

¶8 When balancing the detrimental effects of the relocation against the benefit of the change, the court must

[1] RCW 26.09.480, .520, .260(6).

consider the factors set forth in RCW 26.09.520. These factors are as follows:

(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

(2) Prior agreements of the parties;

(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.

¶9 Mr. Momb contends the relocation statutes—RCW 26-.09.260(6), .480, and .520—are unconstitutional because they violate a fit custodial parent's fundamental right to autonomy in child-rearing decisions. He maintains that interference with this fundamental right must satisfy strict scrutiny and that the State must have a compelling interest

to support its interference with the parent's decision. According to Mr. Momb, the only interest that fulfills the strict scrutiny test is the State's interest in preventing harm to the child. As a result, the State's interest in ensuring the best interest of the child is insufficient to meet the strict scrutiny standard.

¶10 To support his argument that the only interest that meets the strict scrutiny test is the State's interest in preventing harm to the child, Mr. Momb relies on *In re Custody of Smith*, 137 Wn.2d 1, 969 P.2d 21 (1998), the United States Supreme Court case affirming *Smith*'s companion case on narrower grounds, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 109 P.3d 405 (2005). These cases do not consider the child relocation statutes. Instead, these cases discuss the standard that applies in third party, nonparental visitation statutes.

¶11 The constitutionality of Washington's nonparental visitation statute was considered in *Smith*. *Smith* held that "parents have a fundamental right to autonomy in child-rearing decisions" and that this liberty interest is protected under the due process clause of the Fourteenth Amendment. *Smith*, 137 Wn.2d at 13. *Smith* also concluded that State interference with this liberty interest was justified "only if the state can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved." *Id.* at 15. *Smith* concluded that State interference with parents' rights to raise their children is allowed only when the State seeks to prevent harm or risk of harm to a child. *Id.* at 18. Significantly, *Smith* also explained that "the standard of 'best interest of the child' is insufficient to serve as a compelling state interest overruling a parent's fundamental rights." *Id.* at 20. *Smith* held two visitation provisions unconstitutional, RCW 26.10.160(3) and former RCW 26.09.240 (1989). *Id.* at 5.

¶12 *Smith*'s companion case was affirmed on narrower grounds by *Troxel*. *Troxel* concluded that the application of

Washington's third party nonparental visitation statute, former RCW 26.10.160(3) (1989), gave no special weight to the mother's determination of her children's best interest. Instead, the trial court applied a presumption favoring grandparent visitation, and this analytical framework was contrary to the presumption that a fit parent will act in the best interest of his or her child. *Troxel*, 530 U.S. at 69. As a result, *Troxel* concluded that former RCW 26.10.160(3) was unconstitutional as applied. *Troxel* specifically stated that: "[W]e do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." *Troxel*, 530 U.S. at 73.

¶13 In *C.A.M.A.*, the court considered a different nonparental visitation statute, RCW 26.09.240. *C.A.M.A.*, 154 Wn.2d at 55. But first, the court discussed whether *Smith* was good law. The court explained that *Smith* consisted of two consolidated cases, only one of which, *Troxel*, was appealed to the United States Supreme Court. *Id.* at 58. Because *Smith* was unappealed precedent, *Smith* remained binding. The *C.A.M.A.* court concluded that the statute's presumption in favor of grandparent visitation was unconstitutional under *Troxel* and that the application of the best interest standard, instead of harm to the child standard, was unconstitutional under *Smith*. *Id.* at 66.

¶14 Mr. Momb's arguments are based completely on the analysis and standards adopted in these nonparental visitation cases. But no case has applied a strict scrutiny standard when weighing the interests of two parents. *In re Parentage of L.B.*, 155 Wn.2d 679, 710, 122 P.3d 161 (2005). In contrast, Ms. Ragone's arguments are based on the holdings of the cases addressing the relocation statutes.

¶15 *Relocation Cases.* The constitutionality of the relocation statutes was considered at length in *In re Custody of Osborne*, 119 Wn. App. 133, 79 P.3d 465 (2003). In *Osborne*, a parenting plan had been entered granting the grand-

mother significant visitation. When the mother filed her intent to relocate the child, the grandmother filed an objection. The trial court, applying *Troxel*, concluded that RCW 26.09.540 was unconstitutional. *Id.* at 136.

¶16 On appeal, *Osborne* held that the child relocation act addressed the concerns raised in *Troxel*. *Osborne*, 119 Wn.2d at 142. The *Osborne* court explained that while *Troxel* and *Smith* involved third-party attempts to establish a parenting plan granting them visitation rights, the relocation statutes applied after a parenting plan has been entered. In other words, the relocation would interfere with residential or visitation time with a third party that the court had previously found to serve the best interest of the child. Also, unlike the statutes in question in *Troxel* and *Smith*, RCW 26.09.540 limits the third parties whose objections to the relocation require hearing. And, unlike the statutes considered in *Troxel* and *Smith*, the relocation statutes establish a rebuttable presumption that the relocation will be allowed. In this way, the statute incorporates the presumption that a fit parent will act in the best interest of the child. Moreover, the objecting person has the burden of overcoming this presumption and, to succeed, the objecting person must show that the detrimental effect of the relocation upon the child outweighs the benefit of change to the child and the relocating parent. *See* RCW 26-.09.520. Also, unlike the general statutes in *Troxel* and *Smith*, the relocation statute provides specific guidance to the courts in making their decisions. *Osborne*, 119 Wn.2d at 145.

¶17 The *Osborne* court specifically held that the relocation statute addressed all of the concerns that caused the *Smith* court to conclude that the third-party visitation statutes were facially unconstitutional and the concerns that caused the *Troxel* Court to conclude that one of those statutes was unconstitutional as applied. *Osborne*, 119 Wn. App. at 145. Finally, the *Osborne* court stated that:

> The relocation act . . . requires proof that the decision of a presumptively fit parent to relocate the child, thereby interfer-

ing with residential time of a parent or visitation time with a third party that a court has previously determined to serve the best interests of the child, will in fact be harmful to the child—and in fact, so harmful as to outweigh the presumed benefits of relocation to the child and relocating parent. This kind of parental decision making has long been recognized to justify exercise of parens patriae or police power.

*Id.* at 146-47.

¶18 In summary, the *Osborne* standard requires proof that the relocation decision of the presumptively fit parent will be so harmful to the child as to outweigh the presumed benefits of the change to the child and the relocating parent. *Osborne*, 119 Wn. App. at 146-47.

¶19 In *In re Marriage of Horner*, 151 Wn.2d 884, 93 P.3d 124 (2004), the Washington Supreme Court adopted the reasoning in *Osborne*. *Horner* held that the trial courts must determine whether the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating parent. *Id.* at 895. *Osborne* has also been followed in *In re Parentage of R.F.R.*, 122 Wn. App. 324, 332-33, 93 P.3d 951 (2004).

¶20 Mr. Momb argues that *Horner* and *R.F.R.* did not directly address the issues raised here. In particular, Mr. Momb asserts that *Horner* did not involve a constitutional challenge to any aspect of RCW 26.09.520. Mr. Momb also challenges *Osborne*'s conclusion that RCW 26.09.520 could be construed as containing a requirement of harm to the child. Mr. Momb points out that RCW 26.09.520 does not contain the word "harm."

¶21 Mr. Momb's arguments are unpersuasive. While RCW 26.09.520 does not contain the word "harm," it does contain the word "detriment." Of greater importance, while *Horner* was decided based on the application of the abuse of discretion standard, *Horner* adopted the reasoning of *Osborne* that RCW 26.09.520 did not define a general statement of the best interest standard but, instead, the 11 factors in RCW 26.09.520 set forth specific factors for the court to consider at a relocation hearing. *Horner*, 151 Wn.2d

at 895. Also, *Horner* held the trial courts must weigh the detrimental effects of relocation against the benefits of the change.

¶22 We agree with *Horner* and *Osborne* and conclude that the relocation statutes are constitutional.

## 2. Do the relocation statutes violate the Right to Privacy in Family Matters, the Equal Protection Clause, the Commerce Clause, or the Freedom to Travel protected by the Due Process Clause?

¶23 *Right to Personal Choice in Family Matters.* Mr. Momb asserts the application of the relocation statutes violated his fundamental right to freedom in making personal choices regarding private family matters. To support his argument, he relies on *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977).

¶24 In *Moore*, a grandmother challenged a city ordinance that selected certain categories of relatives who may live together in a single family dwelling. The ordinance made it a crime for the grandmother to live with her grandson. *Id.* at 495-97. The court concluded that the freedom of personal choice in matters of marriage and family was a liberty protected by due process. *Id.* at 499. Consequently, any governmental intrusion on choices related to family living arrangements must be examined for the importance of the governmental interest advanced and the extent to which these interests are served by the challenged regulation. *Id.*

¶25 The relocation decision Mr. Momb wishes to make involves the relocation of a child whose custody is determined by a parenting plan. A decision to relocate is a type of parental decision making long recognized to justify the exercise of parens patriae, allowing the State to intrude upon the family because the decision may conflict with the physical or mental health of the child. *Osborne*, 119 Wn. App. at 147. The relocation statutes are the statutory scheme established to assess the different interests in-

volved. As a divorced father, Mr. Momb is only one of the people affected by his decision to relocate.

¶26 *Equal Protection.* Mr. Momb contends the Washington legislature has created a class of "primary residential parents," pursuant to RCW 26.09.187, who are unable to exercise the right to travel and relocate. He maintains that a strict scrutiny analysis applies because a fundamental right is at stake. Mr. Momb also contends that the rights of this class may be interfered with, obstructed by, and subjected to arbitrary decision making by the State.

¶27 Mr. Momb cites no cases illustrating that an equal protection claim has succeeded in this context. Moreover, the decision to relocate is allowed unless an objection is filed. The residential parent is afforded an evidentiary hearing and has the benefit of the presumption that relocation is proper. Moreover, no parent must refrain from moving unless they elect to remain the custodial parent.

¶28 *Commerce Clause.* Congress's power under the commerce clause extends beyond the regulation of commercial goods traveling in interstate and foreign commerce to include regulation of noneconomic activities that affect, impede, or utilize channels of commerce. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 253, 85 S. Ct. 348, 13 L. Ed. 2d 258 (1964). Implicit in the Commerce Clause is the negative or "dormant" commerce clause providing that states impermissibly intrude on federal power by enacting laws that unduly burden interstate commerce. *State v. Heckel*, 143 Wn.2d 824, 832, 24 P.3d 404, *cert. denied*, 534 U.S. 997 (2001). There is a two-part analysis under the dormant commerce clause. First, the court determines whether the state law openly discriminates against interstate commerce in favor of intrastate economic interests. Second, the court balances the local benefits against the interstate burdens. *Id.*

¶29 Mr. Momb contends Washington's relocation statutes enable a court to prohibit Washington residents from moving from Washington to another state. He maintains that this regulation violates the right of citizens

to move from state to state, thereby affecting interstate commerce.

¶30 None of the cases cited by Mr. Momb deal with parental relocation statutes. The closest case, *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002), held that the International Parental Kidnapping Crime Act, 18 U.S.C. § 1204, did not violate the commerce clause.

¶31 The dormant commerce clause is not implicated here. Washington's relocation statutes do not prevent the residential parent from relocating. Instead, these statutes serve as a valid exercise of state power to protect children. Moreover, even if we apply the two-part analysis set forth in *Heckel*, the relocation statutes do not violate the commerce clause. First, the relocation statute does not openly discriminate against interstate commerce in favor of intrastate economic interests. Second, the intrastate benefits to protecting a child outweigh any burden to interstate commerce. Here, the statutes regulate to effectuate a legitimate local concern. *See Heckel*, 143 Wn.2d at 832.

¶32 *Right to Travel.* Mr. Momb contends the relocation statutes violate his right to travel.

¶33 The right to travel has been recognized as a fundamental right. *In re Interest of M.G.*, 103 Wn. App. 111, 117, 11 P.3d 335 (2000). However, the relocation statutes do not prevent Mr. Momb from traveling or relocating. The order entered by the trial court prevents Bailey from relocating. And the constitutional rights of children may be treated differently than those of adults because of the peculiar vulnerability of children; their inability to make informed, mature, and critical decisions; and the importance of the parental role in child rearing. *Id.* at 119.

### 3. Are the relocation statutes unconstitutional as applied?

¶34 Mr. Momb contends the relocation statutes were unconstitutional as applied because the court did not give special weight to Mr. Momb's decision and did not apply the presumption that he made the decision to relocate

based on Bailey's best interest. Mr. Momb compares this case to the *Troxel* case. In *Troxel*, the Supreme Court found that the Washington third-party visitation statute was unconstitutional as applied because the trial court gave no special weight to the parent's determination of the child's best interest and, instead, the trial court applied a presumption in favor of grandparent visitation. *Troxel*, 530 U.S. at 69.

¶35 In making his argument, Mr. Momb relies on some statements made by the trial court about Browns Valley and South Dakota. For example, the court stated that: "I certainly don't think that isolating a child out in the hinder land [sic] of South Dakota is necessarily a positive thing in terms of quality of life." Clerk's Papers (CP) at 518. The court also stated that: "Doesn't make sense to be locating out in the middle of nowhere from the court's perspective . . . and I'm sure that people in Browns Valley would take umbrage at my comment that it's in the middle of nowhere, but it certainly[,] compared to Spokane[,] is not the hub of the universe." CP at 519.

¶36 Unlike the statute in *Troxel* and *Smith*, the relocation statutes set forth 11 specific factors for courts to consider at a hearing to determine whether relocation of a child will be allowed. *See Osborne*, 119 Wn. App. at 144-45. "[C]onsideration of all the factors is logical because they serve as a balancing test between many important and competing interests and circumstances involved in relocation matters." *Horner*, 151 Wn.2d at 894. Here, the trial court considered each of these factors.

¶37 Mr. Momb does not challenge any of the court's findings. When considering Bailey's relationship with her mother, the court found that this relationship was equal to, if not better than, Bailey's relationship with Mr. Momb. The court further determined Bailey was at an age where her mother is very important to her, that Ms. Ragone was the parent that Bailey confided in, and that the location of Browns Valley was not conducive to a continued relationship between Bailey and her mother. The court also found

that Bailey's relationship with her siblings was important, and these siblings, the children of Ann Ladd, Mr. Momb's second wife, lived in Spokane. In contrast, the court found that the relationship between Bailey and her stepmother, Judy Momb, is not positive, and that the record was replete with evidence of inappropriate actions taken by the stepmother toward both Bailey and Ms. Ragone.

¶38 Considering factor 7, the court found that:

> the quality of life, resources, and opportunities available to the child and the relocating party in the current and proposed geographic locations, there is no demonstration that Browns Valley, South Dakota offers anything better to the child than what is available in Spokane. To the contrary, isolating Bailey in South Dakota from currently available activities is not a positive factor.

CP at 446. The court found that the stated reason for relocating—business—made no sense to the court. Instead, the court concluded that the relocation was based in substantial part on Mr. Momb's and Judy Momb's desire to move away from Ann Ladd. The court concluded that this was not a proper basis for a relocation request and that Mr. Momb's request for relocation was not an exercise in good faith.

¶39 Reading the court's decision, it is clear that the court examined each of the statutory factors and that the court did not base its decision on a bias against Browns Valley.

¶40 Affirmed.

SCHULTHEIS and BROWN, JJ., concur.

Review denied at 158 Wn.2d 1021 (2006).