196 P.3d 753 (2008)
Brian D. BAY, Appellant,
v.
Kelly M. JENSEN, Respondent.
No. 37239-8-II.
Court of Appeals of Washington, Division 2.
December 2, 2008.
*755 Kathryn B. Abele, The Freedom Law Firm PLLC, Lynnwood, WA, for Petitioner.
Kelly M. Jensen (Appearing Pro Se).
HUNT, J.
¶ 1 Brian Bay appeals the trial court's December 21, 2007 order (1) allowing his ex-wife, Kelly Jensen, to move their two children from California to New Mexico and then to Washington; (2) precluding him from filing any further "legal action" in Pierce County until he pays attorney fees and other costs awarded to Jensen; and (3) requiring him to pay $3,000 to Jensen for attorney fees. Bay argues that the trial court (1) abused its discretion when it allowed Jensen to relocate his children without examining the 11 statutory factors set out in RCW 26.09.520; (2) violated his right to due process by restricting his access to the courts to enforce his rights under the parenting plan; and (3) abused its discretion by requiring him to pay Jensen's attorney fees without balancing the parties' relative need and ability to pay.[1]
¶ 2 We (1) reverse the trial court's order allowing Jensen to relocate the children out of California;[2] (2) vacate the order precluding Bay from filing any "legal action" in Pierce County; and (3) vacate the award of attorney fees to Jensen and remand for a new attorney fee hearing with entry of findings of fact and conclusions of law.

FACTS
¶ 3 Brian Bay and Kelly Jensen were married and had two children together. After *756 they separated, the trial court entered a final parenting plan on May 30, 2007.[3] The parenting plan (1) anticipated that Jensen, Bay, and the children would all move to California;[4] (2) required joint decision making for major decisions, including decisions about the children's education; and (3) provided that Bay have "visitation in California" on Tuesdays and Saturdays.[5] Appendix B to Petitioner's Reply Brief on Motion for Discretionary Review. The parenting plan also summarized the notice that RCW 26.09.430 to .480 required Jensen to give if she intended to relocate the children again, including (1) notice of an intended relocation of the children to every person entitled to court-ordered time with the children; (2) notice at least 60 days before any intended relocation of the children outside the school district; and (3) notice within five days of learning about the relocation if impossible to give 60 days notice. Jensen could delay notice by 21 days if she was entering a domestic violence shelter or if she was relocating "to avoid a clear, immediate and unreasonable risk to health and safety." And "[f]ailure to give the required notice may be grounds for sanctions, including contempt." Appendix B to Petitioner's Reply Brief on Motion for Discretionary Review.

A. Court-Approved Relocation of Children from Washington to California
¶ 4 As the parenting plan anticipated, Jensen relocated the children in late May 2007 from Washington to California so that she could live with her new fiancé, Richard Torrez. Bay then moved to California in order to be close to his children.
¶ 5 On December 2, 2007, Jensen and Torrez had a fight that ultimately ended their relationship. According to Jensen, Torrez became violent and assaulted her during this altercation. On December 3, Torrez moved out of the apartment he had been sharing with Jensen and her children. On December 4, Torrez and Jensen signed a 30-day notice to terminate their lease as of January 4, 2008; Torrez paid the rent through January 1, 2008.
¶ 6 Also on December 4, Jensen's father flew to San Diego to help pack up her belongings. Jensen called her attorney about her intent to relocate the children. Jensen's attorney informed her, "[Y]ou can't just up and leave, we've got to give notice, you understand the Relocation Act, you've been there before, we need to come into court, you need to have me go into court[.]" Report of Proceedings (RP) (Dec. 5) at 4.

B. Unapproved Relocation of Children From California to New Mexico
¶ 7 In spite of her attorney's warnings, Jensen took the children and left San Diego with her father, without notice to Bay and without court approval, at 12:30 am on December 5. They arrived in Las Cruces, New Mexico later that day.
¶ 8 Jensen filed a Notice of Intended Relocation of Children to New Mexico. On December 5, Jensen's attorney served the notice on Bay's attorney, stating that she (Jensen's attorney) intended to obtain an ex parte order waiving the notice requirements and allowing Jensen to relocate the children to New Mexico. This notice did not mention any plan to move the children from New Mexico back to Washington; nor did it include a proposed modified parenting plan and residential schedule to accommodate the substantial distance between Bay in California and his children in New Mexico.[6]
*757 ¶ 9 Later that day, Jensen's attorney appeared in Pierce County Superior Court and asked the court (1) to allow the Jensen's immediate relocation with the children to New Mexico pending a final court order, and (2) to waive the notice requirements under RCW 26.09.460[7] because of the domestic violence issue. Bay's attorney[8] objected to the relocation and argued that the children should be returned immediately to California. The court stated that it was premature "to say [Jensen] can relocate pending a relocation trial or she cannot. It is also premature... to say these children have to go back to the state of California." RP (Dec. 5) at 8. The court then entered an order deferring any ruling until December 21.

C. Motion for Contempt
¶ 10 On December 11, Bay filed a Motion/Declaration for an Order to Show Cause Re Contempt and Other Requested Relief, asserting three grounds for contempt: (1) Jensen failed to comply with the court-ordered visitation schedule by not making the children available on the specific days on which he was entitled to be with his children; (2) Jensen failed to comply with the parenting plan's joint decision-making authority by removing their son from his California kindergarten class without consulting Bay; and (3) Jensen failed to comply with the relocation statute[9] notice provisions before she moved the children to New Mexico without notice to Bay or his attorney.
¶ 11 On December 19, Jensen filed a declaration responding to Bay's contempt motion. For the first time, she asserted that she next intended to relocate the children again from New Mexico back to Washington.

D. Trial Court Hearing; Approved Relocation of Children Back to Washington
¶ 12 At the beginning of the December 21 hearing, the parties signed an agreed order converting their legal separation into a dissolution. The trial court then heard argument on Jensen's motion for immediate relocation to New Mexico (now, after the fact) and proposed subsequent relocation to Washington. Jensen also requested attorney fees.
¶ 13 Neither party presented testimony; instead, they offered declarations, which the trial court considered.[10] The court did not hear separate argument on Bay's motion for contempt; but during their arguments on the proposed relocation, the parties addressed the grounds for contempt related to the relocation.[11]
¶ 14 At the end of the hearing, the trial court entered an order (1) waiving the statutory notice requirements for Jensen's relocation with the children to New Mexico; (2) temporarily authorizing the relocation of the children both to New Mexico and then to Washington by January 15, 2008, pending a final relocation hearing; (3) leaving in effect the original May 30, 2007 parenting plan, except for ordering all visits to occur in Washington rather than in California; (4) granting Bay "make-up time" with his children for the period he had been unable to see them from December 4, 2007, to their relocation back to Washington; (5) awarding Jensen $3,000 in attorney fees, plus travel reimbursement for her travel to Washington for the contempt hearing; (6) prohibiting Bay from bringing further "legal action in Pierce County" until he paid these amounts, as well *758 as previously awarded attorney fees; and (7) denying Bay's motion for contempt.
¶ 15 In allowing Jensen ultimately to relocate the children back to Washington pending a final relocation hearing, the trial court noted, "It's cheaper to live here and to stay here than it is in Southern California." RP (Dec. 21) at 27. The trial court did not consider on the record the 11 factors required in the relocation statute. RCW 26.09.520. Nor did the trial court enter findings of fact or conclusions of law to support this most recent relocation, as required by RCW 26.09.520 and In re Marriage of Horner, 151 Wash.2d 884, 896, 93 P.3d 124 (2004).[12]

E. Discretionary Review
¶ 16 Bay sought discretionary review of the trial court's December 21, 2007 order. We granted review of the following issues: (1) whether the trial court abused its discretion by temporarily allowing two relocations of the children pending a final hearing; (2) whether the trial court abused its discretion by ordering Bay to pay fees awarded to Jensen before he could file any additional "legal actions" in Pierce County; and (3) whether the trial court abused its discretion in awarding Jensen $3,000 in attorney fees.
¶ 17 Although we accelerated review, No. 37239-8-II, Ruling Granting Review and Accelerating Review, we granted Jensen's multiple requests for extensions of time in which to file her Respondent's Brief. But when she failed to file her brief, even with these extensions, we formally precluded her from oral argument under RAP 11.2(a). Nevertheless, when Jensen appeared pro se in court for oral argument, we gave her an opportunity to present facts from the record to support her argument.[13]

ANALYSIS

I. Relocation
¶ 18 Bay argues that the trial court abused its discretion by allowing Jensen to relocate his children temporarily from California to New Mexico and then again to Washington without proper notice and without issuing findings of fact on the 11 relocation factors outlined in RCW 26.09.520. We agree.

A. Standard of Review
¶ 19 We review a trial court's decisions allowing the relocation of children for abuse of discretion. See Horner, 151 Wash.2d at 893, 93 P.3d 124. "Abuse of discretion occurs `when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons.'" Id. (quoting State v. Brown, 132 Wash.2d 529, 572, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998)).
A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.
In re Marriage of Littlefield, 133 Wash.2d 39, 47, 940 P.2d 1362 (1997).

B. Notice Requirements for Parental Relocation
¶ 20 A parent with whom a child resides the majority of the time must give notice to every other person entitled to residential or visitation time with the child if the parent intends to relocate with the child. RCW 26.09.430. Unless special circumstances apply, if the parent intends to relocate the children outside their school district, the parent must give this notice no less than 60 days before the date of the intended relocation or no more than five days after the date on which the parent has information about the relocation if the parent "did not know and could not have reasonably known the information *759 in sufficient time to provide the sixty-days' notice, and it is not reasonable to delay the relocation." RCW 26.09.440(1). Notice may be limited or delayed by 21 days in certain circumstances, including if the parent is relocating to avoid a clear, immediate, and unreasonable risk to the health or safety of a person or the child. RCW 26.09.460.

1. Required procedure when relocating parent does not give adequate notice
¶ 21 Under RCW 26.09.510(2), if the parent relocating with the child does not give notice 60 days in advance of the move, the court may grant a temporary order authorizing the intended relocation of the child pending a final hearing if the court (1) finds that the circumstances warrant issuance of a temporary order in absence of compliance with the notice requirements; (2) issues an order for a revised schedule for residential time with the child; and (3) after examining the evidence presented at a hearing for temporary orders in which the parties had adequate time to prepare and be heard, finds that there is a substantial likelihood that the court will approve the intended relocation at a final hearing.
¶ 22 Jensen did not give 60 days notice to Bay for either the move to New Mexico or the move to Washington. Nor did the trial court meet the three requirements for entering a temporary order when a party fails to give proper notice.
¶ 23 First, the trial court failed to enter a finding about whether the "circumstances otherwise warrant[ed] issuance of a temporary order in absence of compliance with the notice requirements." RCW 26.09.510(2)(a). Even if Jensen's declaration that Torrez had assaulted her arguably might have warranted her quick flight from California, taking the children with her,[14] the record does not show why she could not and did not give proper notice to Bay that she intended to move the children from California to New Mexico. And the record contains no arguably justifiable reason why Jensen could not give Bay proper notice that she next intended to relocate the children from New Mexico to Washington.
¶ 24 Second, the trial court failed to enter an order revising the parents' respective residential times to accommodate Jensen's having relocated the children far away from Bay. RCW 26.09.510(2)(a). Although the trial court changed the location of Bay's visits with his children from California to Washington, it did not change the timing of these visits to reflect the fact that Bay remained in California, where he had originally moved to be near his children when Jensen previously relocated them from Washington to California just months earlier. Instead, the trial court left intact the original May 30, 2007 parenting plan's provision giving Bay twice weekly visitation time with the children.
¶ 25 The trial court must have been aware of the difficulty Bay would have visiting his children in a different state twice weekly because this had also been the situation when Jensen relocated the children from California to New Mexico. For that relocation, the trial court granted Bay "make-up time" for the period during which he had been unable to see his children. But the trial court failed to revise the schedule in a similar way to allow Bay to continue to see his children in spite of Jensen's relocating them a third time in less than a year to Washington over his objection.
¶ 26 Third, the trial court failed to enter a finding that it likely would approve Jensen's intended relocations at the final hearing. RCW 26.09.510(2)(b).

2. Mandatory consideration of 11 factors under RCW 26.09.520
¶ 27 RCW 26.09.520 lists 11 factors that the trial court must consider and balance in order to determine whether the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person. Horner, 151 Wash.2d at 894-95, 93 P.3d 124. These factors are:
(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, *760 siblings, and other significant persons in the child's life;
(2) Prior agreements of the parties;
(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention; and
(11) For a temporary order, the amount of time before a final decision can be made at trial.
RCW 26.09.520.
¶ 28 When considering whether a trial court abused its discretion by allowing relocation, we first look to see if the trial court entered specific findings on each factor. Horner, 151 Wash.2d at 896, 93 P.3d 124. If the trial court did not enter the specific findings, we look to see if substantial evidence was presented on each factor and whether the "trial court's findings of fact and oral articulations reflect that it considered each factor." Id. A trial court abuses its discretion if it does not satisfy either of these methods of documenting its consideration of the child relocation factors. Id. Such is the case here.
¶ 29 RCW 26.09.520 and Horner both warrant reversal. The trial court failed to satisfy either of the methods of documenting its consideration of the statutorily required child-relocation factors. There are no written findings of fact. Nor did the trial court address the statutory factors in its oral ruling on the relocation, in which it stated:
I am not happy with Ms. Jensen's actions in this case. And with all due respect to the emotion that she expresses in the courtroom, I'm very unhappy with what's happened in this case and I guess time will tell and trial will tell what the factual issue  what the factual determinations are and what the factual findings will be by this Court, but to have requested relocation, to have caused Mr. Bay to now relocate himself to San Diego and now be in New Mexico and suggesting that you're going to move back to Washington, I'm going to allow it because of the financial issues which I think both parties established at trial.[[15]] It's cheaper to live here and to stay here than it is in Southern California.
RP (Dec. 21) at 27.
¶ 30 Even if this oral statement could be construed as addressing the seventh factor (available resources) and tenth factor (the financial impact of the move) of RCW 26.09.520, the other nine other factors remain unaddressed. Under the Supreme Court's holding in Horner  that the trial court must address each factor  the trial court abused its discretion in allowing Jensen to relocate the children first to New Mexico and then to Washington without considering these 11 statutory factors on the record. This failure is especially remarkable in light of the trial court's having scolded Jensen for her first *761 relocation of the children out of Washington, which prompted Bay's relocation to California so he could spend time with his children.
¶ 31 We hold that Horner requires reversal of these two temporary relocation orders.

II. Prohibition on Further Legal Action in Pierce County
¶ 32 Bay argues that the trial court abused its discretion when it required him to pay Jensen's attorney fees and other costs before he could file any further "legal action" in Pierce County. Specifically, Bay argues that the order violates his right to substantive due process under the 14th Amendment[16] by interfering with his fundamental liberty interest in the care and custody of his minor children because the order removes the only tool (contempt proceedings) that he has to enforce the visitation provisions in the parenting plan. We agree.
¶ 33 The portion of the order restricting Bay's access to the courts provides: "All fees and travel reimbursement ordered today and previously on Oct. 31, 2007, and on Nov. 21, 2007 shall be paid prior to any further legal action being brought in Pierce County." Clerk's Papers (CP) at 165.

A. Standard of Review
¶ 34 We review a trial court's order limiting a party's access to the court for an abuse of discretion. See In re Marriage of Giordano, 57 Wash.App. 74, 78, 787 P.2d 51 (1990).
¶ 35 Under RCW 2.28.010(3), a trial court has the power to provide for the orderly conduct of proceedings before it. Further, "in Washington, trial courts have the authority to enjoin a party from engaging in litigation upon a `specific and detailed showing of a pattern of abusive and frivolous litigation.'" Yurtis v. Phipps, 143 Wash. App. 680, 693, 181 P.3d 849 (2008) (quoting Whatcom County v. Kane, 31 Wash.App. 250, 253, 640 P.2d 1075 (1981)). Proof of mere litigiousness is insufficient to warrant limiting a party's access to the court. Yurtis, 143 Wash.App. at 693, 181 P.3d 849.
¶ 36 In the family law context, "because of the paramount concern for the welfare of the children it is inappropriate and erroneous to withhold an inquiry into the best interests of the children as a penal remedy" for failing to comply with a court order. Bonn v. Bonn, 12 Wash.App. 312, 317-18, 529 P.2d 851 (1974). This rule is not absolute; a trial court may place reasonable restrictions on a party who abuses the court process so long as the party can still access the court to present a new and independent matter. Giordano, 57 Wash.App. at 78, 787 P.2d 51; Bonn, 12 Wash.App. at 317, 529 P.2d 851. See also In re Marriage of Lilly, 75 Wash.App. 715, 719-20, 880 P.2d 40 (1994) (upholding trial court's order conditioning further proceedings on father's payment of attorney fees to mother in the "very unusual circumstances" where court had considered motion for new parenting plan on the merits using procedure to which father had originally agreed, but later contested).

B. Abuse of Discretion
¶ 37 In Giordano, the trial court imposed a moratorium on non-emergency motions in a dissolution case, in which the pro se mother had been filing myriad motions, until after a trial on a separate issue; at that point, the court would conduct a trial on all issues brought to the court's attention. 57 Wash. App. at 75, 787 P.2d 51. In affirming the trial court, Division One of our court noted that (1) the moratorium did not totally deny access to court; (2) the effect of the moratorium was merely to delay part of the hearing for efficient resolution of the issues; and (3) the moratorium provided a safety valve for emergencies, including delinquent child support. Giordano, 57 Wash.App. at 78, 787 P.2d 51.
¶ 38 In Bonn, where the father had appeared before the court a "shocking" number of times to modify visitation rights, the trial court stayed further proceedings until the father paid child support and attorney fees. 12 Wash.App. at 314, 529 P.2d 851. After the stay was in place, the father filed another petition to modify based on new information *762 that the mother had been recently arrested for leaving their children unattended while she was drinking alcohol at a nearby establishment. Id. at 314, 529 P.2d 851. After ruling on this motion, the trial court again stayed all further proceedings pending the father's payment of attorney fees and his support obligations. Id. at 314-15, 529 P.2d 851. The father appealed. We reversed, holding, "Even one who is in contempt of court has access to the courts to present a new and independent matter." Id. at 317, 529 P.2d 851 (quoting Lunsford v. Waldrip, 6 Wash.App. 426, 429, 493 P.2d 789 (1972)).
¶ 39 The case before us here is more like Bonn than Giordano. First, unlike Giordano, the trial court here provided no safety valve for resolving emergencies, especially those relating to Bay and his time with the children. Second, unlike the offending parties in both Bonn and Giordano, the record here contains no "specific and detailed showing of a pattern of abusive and frivolous litigation" by Bay. Yurtis, 143 Wash.App. at 693, 181 P.3d 849. But even if Bay, like the father in Bonn, had filed an excessive number of motions, Bay, like Bonn, should similarly have had some access to the court, as was the case in Giordano, that was not contingent on Bay's first paying attorney fees and other costs awarded to Jensen.
¶ 40 Here, in contrast, the trial court's order barred Bay from "legal action in Pierce County." This order precluded Bay from asking the court (1) to enforce the parenting plan, even against future violations by Jensen, no matter how severe; and (2) for "make up time" to compensate for Jensen's relocating the children from New Mexico to Washington.[17] This order's broad reach and the lack of supporting findings of fact or evidence in the record compel us to vacate the order prohibiting Bay from further "legal action in Pierce County."

III. Attorney Fees

A. Trial
¶ 41 Bay next argues that the trial court abused its discretion in ordering him to pay $3,000 in Jensen's attorney fees without first entering any specific findings of fact or balancing the parties' relative financial needs and abilities to pay. Again, we agree.

1. Standard of review
¶ 42 We review an award of attorney fees for abuse of discretion, whether the award is under a statute or for intransigence. In re Marriage of Bobbitt, 135 Wash. App. 8, 29-30, 144 P.3d 306 (2006). The party challenging the award must show that the court used its discretion in an untenable or manifestly unreasonable manner. In re Marriage of Mattson, 95 Wash.App. 592, 604, 976 P.2d 157 (1999). Where a trial court fails to provide sufficient findings of fact and conclusions of law to develop an adequate record for appellate review of the fee award, we will vacate the judgment and remand for a new hearing to gather adequate information and for entry of findings of fact and conclusions of law regarding the fee award. Bobbitt, 135 Wash.App. at 30, 144 P.3d 306.
¶ 43 Where a party moves for contempt under RCW 26.09.160, a court may award attorney fees to the non-moving party "if the court finds the motion was brought without reasonable basis." RCW 26.09.160(7). If the court finds that the motion was brought without a reasonable basis, the court must also award all costs and a civil penalty of not less than one hundred dollars. RCW 26.09.160(7). If the court finds that there was a reasonable basis for the contempt motion, the nonmoving party is not entitled to attorney fees even if the motion for contempt is denied. In re Marriage of Humphreys, 79 Wash.App. 596, 599, 903 P.2d 1012 (1995).
¶ 44 The trial court may also award attorney fees under RCW 26.09.140 "after considering the financial resources of both parties." When considering an award of attorney fees under this statute, the trial court generally must balance the needs of the party requesting the fees against the ability of the opposing party to pay the fees. Mattson, 95 Wash.App. at 604, 976 P.2d 157. But the *763 court may also award attorney fees based on a party's intransigence. Id. "Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions." Bobbitt, 135 Wash.App. at 30, 144 P.3d 306.

2. Abuse of discretion
¶ 45 Here, the trial court's written order awarding attorney fees includes no supporting findings of fact. In its oral ruling, however, the trial court stated:
I am ordering also that fees be paid by Mr. Bay for the necessity of the contempt portion of this hearing. This should have been a very short hearing with the lawyers only, so I'm not awarding all the fees but I'm awarding $3,000.00 in additional fees. I'm also awarding travel expenses.[[18]]
RP (Dec. 21) at 29. Thus, it appears from this language that the trial court awarded fees based on the contempt statute, RCW 26.09.160. Yet the trial court failed to find specifically that there was no reasonable basis for Bay's contempt motion, as required by RCW 26.09.160(7).[19]
¶ 46 Because there are no findings of fact or conclusions of law to enable our review of the trial court's award of attorney fees, we vacate the award and remand.[20]

B. Appeal
¶ 47 Bay requests attorney fees for this appeal, but he neither cites a specific statute nor explains the grounds for his request. RAP 18.1(b) requires more than this bald request for attorney fees on appeal.[21] The rule requires argument and citation to authority to advise us of the appropriate grounds for an award of attorney fees and costs.[22] Therefore, we deny Bay's request for attorney fees on appeal.
¶ 48 We reverse the trial court's temporary order allowing Jensen to relocate the children from California to New Mexico and from New Mexico to Washington. We vacate the trial court's order preventing Bay from filing further "legal action" in Pierce County before paying the fees he owes Jensen. We vacate the trial court's award of attorney fees to Jensen and remand for a new hearing on attorney fees and for entry of findings of fact and conclusions of law.
We concur: HOUGHTON, P.J., and ARMSTRONG, J.
NOTES
[1] At oral argument, Bay argued for the first time that we should declare that California has jurisdiction in this matter. He further argued that if we hold that Washington has jurisdiction, we should remand to a different trial court. Because Bay did not raise these issues in his brief, we do not consider them.
[2] If the Pierce County Superior Court entertains a new motion to relocate the children out of California, then the trial court must conduct a new hearing and weigh the appropriate RCW 26.09.520 statutory factors. By entering these contingent remand instructions, we do not impliedly resolve any potential challenge to the jurisdiction of the Pierce County Superior Court versus the California courts over this case, an issue that is not before us in this appeal.
[3] Although they created a parenting plan, Bay and Jensen did not formally dissolve their marriage until December 21, 2007.
[4] The record on appeal does not include (1) any information about how the parenting plan was created or why the trial court allowed Jensen to relocate the children to California, or (2) the report of proceedings from the hearing where the trial court considered Jensen's proposed move to California.
[5] Although the court ordered supervision for Bay's visits with the children, the trial court did not include any restrictions based on parental conduct. It is unclear from the record on appeal why at some point the court appears to have ordered supervision of these visits.
[6] The notice stated that a new proposed parenting plan would be filed at a later date. The record on appeal does not reflect that Jensen ever filed a new proposed parenting plan.
[7] Although not entirely clear from the record, Jensen appeared to be asking the court to waive the requirement that she give Bay notice 60 days before moving.
[8] At the time of this hearing, Bay did not know that his children were no longer in California.
[9] RCW 26.09.405 to .909.
[10] Bay submitted his own declaration, and declarations by his father, by his mother, and by Richard Torrez (Jensen's ex-fiancé). Jensen submitted her own declaration, declarations by her father, and by Jackie Stroh, the woman who had supervised visitation when Jensen and the children had previously lived in Washington. Jensen also submitted letters her co-workers had written.
[11] Jensen argued that, after Torrez assaulted her, she had no alternative to leaving California and, thus, she did not intend to violate either the statutory notice requirement or the parenting plan's joint education-decision making requirement. But neither Jensen nor the court addressed Bay's allegation that Jensen had failed to make the children available to him for visitation.
[12] Apparently, the trial court did not schedule a final hearing on whether the children's relocation would become permanent. We note that the interlocutory nature of this appeal may be a contributing factor.
[13] Jensen told us that she had no legal citations to present.
[14] The trial court entered no written findings of fact that Torrez had assaulted Jensen; nor did it mention the alleged domestic violence in its oral ruling.
[15] This appears to be a reference to the earlier trial. Bay did not present evidence regarding financial issues at this hearing.
[16] U.S. Const. amend. XIV § 1.
[17] The trial court had ordered "make up time" for Bay when it previously allowed Jensen to relocate the children from California to New Mexico.
[18] Bay does not appeal the award of these travel expenses, which, therefore, are not before us.
[19] Nor did the trial court award the required one hundred dollar civil penalty required upon a finding of no reasonable basis for the contempt motion. RCW 26.09.160(7). It is also possible that this award was based on intransigence; but again, there are no findings of fact to support such an award.
[20] If the trial court conducts a new hearing and determines that an award of attorney fees is appropriate, it should enter appropriate findings of fact or conclusions of law.
[21] See Thweatt v. Hommel, 67 Wash.App. 135, 148, 834 P.2d 1058, review denied, 120 Wash.2d 1016, 844 P.2d 436 (1992).
[22] Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710-11 n. 4, 952 P.2d 590 (1998).