# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>ARACELI FELIX,<br><br>　　　　　　　Appellant,<br><br>　　v.<br><br>LUIS MELENDEZ,<br><br>　　　　　　　Respondent. | No. 48132-4-II<br><br>UNPUBLISHED OPINION |

MELNICK, J. — Araceli Felix appeals the trial court's order granting Luis Melendez permission to permanently relocate their two daughters from Washington to Florida and denying her petition for a modification of the parenting plan to make her the primary residential parent. We conclude that the trial court did not err by granting the petition for relocation, denying the petition for modification, or denying Felix's motion for reconsideration. We do not consider whether the trial court erred in its evidentiary rulings. We affirm.

## FACTS

Felix and Melendez married on October 5, 2007. They had two daughters. Felix and Melendez separated on April 1, 2011.

On March 8, 2012, Felix served Melendez with a petition for dissolution of their marriage. Richard Bartholomew became the guardian ad litem (GAL) for the children.

The superior court entered a final parenting plan and ordered that upon enrollment in school, the children would primarily reside with Melendez. It also ordered that the children were not to be left alone with Virgilio Martin Rodriguez, Felix's fiancé, and that Rodriguez obtain a domestic violence assessment.

Felix alleged Amica Santiago, Melendez's wife, abused the children and filed two ex parte motions for restraining orders against Santiago. The trial court temporarily placed the children with Felix, and restrained Melendez from allowing the children to be around Santiago. After a hearing, the trial court denied Felix's motions. The trial court ordered both Felix and Melendez to complete mental health evaluations. The trial court again appointed Bartholomew as the GAL for the children. Finally, the trial court ordered the parties to return to the previous parenting schedule.

Melendez filed a notice of intended relocation to Florida.[1] Felix filed an objection to relocation, a motion to restrain any temporary relocation, and a petition for a major modification of the parenting plan. After a hearing on the motion, the superior court allowed the relocation on a temporary basis.

II.    TRIAL

The trial court held a trial on both Felix's petition for a major modification of the parenting plan and Melendez's petition for permanent relocation.

Bartholomew did not see any grounds for a modification of the parenting plan, and he did not find abuse in either household, nor did Child Protective Services (CPS). Bartholomew testified that the only applicable modification factor was that the children's present environment was detrimental to the children's physical, mental or emotional health, and the likely harm to be caused

---

[1] This document is not included in the record on appeal. In addition, Felix's motion for a major modification of the parenting plan related to the alleged abuse by Santiago is also not included in the record on appeal.

by a change was outweighed by the advantage of a change. He did not see anything negative in Melendez's house that would warrant a modification. Bartholomew testified that the children reported to their counselors that Felix told them that Santiago was mean to them and that Melendez did not love them. When Bartholomew spoke with the children about statements they made about alleged abuse by Santiago, they could not provide him with details; they would respond, "Well, that's what mom told us." 1 Report of Proceedings (RP) at 28. Bartholomew did believe that Santiago had been "rougher with [one of the children]" but not to the level of abuse. 1 RP at 28. CPS determined any referrals either "unfounded" or lacking a need for investigation. 1 RP at 28.

Bartholomew visited the children in Felix's home. He observed the children to be comfortable there. They were comfortable with both Felix and Rodriguez. Bartholomew also had a Skype conversation with the children after they moved to Florida. He also observed that in their Skype conversation, Melendez's Florida house looked appropriate, the children were "clearly comfortable" and "clearly happy where they were." 1 RP at 34. When he observed the children in Melendez's home, the children were very comfortable with Santiago. He did note that in the past, Felix had problems getting one of the children to school on time, even though they lived within walking distance.

Melendez testified that he moved to Florida with the children, approximately 25 to 30 minutes from Orlando. Their new house in Florida was a three bedroom, two bathroom house with an office. Melendez enrolled the girls in a highly rated elementary school in Florida.

Melendez testified that he moved in "good faith" because he was subject to a layoff, and neither party had family in Washington, but he and the children had an established support system in Florida, including extended family. 2 RP at 268. Melendez worked at Joint Base Lewis-

3

McChord (JBLM) as a helicopter mechanic. He quit because Santiago acquired a position in Florida and moved there with her own children.

Melendez testified that disrupting the children's contact with him would impose a safety risk to the children. The children did not have serious problems in school and were doing well in Florida. He also opined that if the court prevented the relocation, it would put their education at risk because Felix had difficulty getting one of the children to school on time or at all when they lived close to the school.

Melendez testified that the children have a bond with both sets of parents, and they have a bond with their step-siblings and half-siblings, but he was the primary residence for two years and two months.

Felix also testified that the children had a great bond with both herself and Melendez. The children were close to both their step-siblings and their half-siblings. Felix believed that disrupting the children's relationship with Melendez would be "less beneficial for their emotional well-being." 2 RP at 305. She testified that her daughters told their counselors and CPS reporters that they would prefer to live with her.

Felix believed that she opposed the relocation in good faith because she did not have the financial means to relocate to Florida and would be unable to move to Florida for another five to six years. In addition, she could not move because her fiancé and father of her other two children, Rodriguez, was in the military and assigned to a unit at JBLM.

After hearing the evidence and asking specific questions of both parents related to the relocation factors, the trial court expressed its findings on each factor on the record. The trial court concluded that the evidence supported permitting Melendez to relocate the children. The trial court denied Felix's modification petition. The trial court entered a final parenting plan and order

on relocation that permitted Melendez to relocate the children with specific findings on each relocation factor. The order denied Felix's motion for a major modification.

Felix filed a motion for reconsideration of the parenting plan and relocation order. She argued that the children's physical, mental, and emotional well-being were in danger based on a recent incident in Florida, where she alleged in her declaration Melendez joined a "cult" that calls itself a church. Clerk's Papers (CP) at 420. In the declaration, Felix stated Melendez called the police because Santiago would not let him take the children to a meeting of the cult. Felix further stated that from the information she received from Santiago, "this has been going on for a year." CP at 423. Felix included an e-mail from Santiago, which stated that the church or cult in Washington was a few people in a house, and in Florida, it was based in a hotel. Felix included screen shots of text messages with Santiago that also stated that Melendez previously participated in this church while living in Washington.

The trial court denied Felix's motion for reconsideration in a written order without oral argument because it found that none of the allegations raised by Felix constituted newly discovered evidence under CR 59. Felix appeals.

## ANALYSIS

### I.    NONCOMPLIANCE WITH RAP'S

As an initial matter, neither Felix nor Melendez complied with the Rules of Appellate Procedure in their briefs. Both parties are self-represented litigants (SRL's). In general, SRL's are held to the same standard and rules of procedure as attorneys. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

RAP 10.3(a)(5) requires a party to make "[a] fair statement of the facts and procedure relevant to the issues presented" and include "[r]eference to the record . . . for each factual

statement." Both parties provided minimal citations to the record to support their statement of the facts or their arguments. The purpose of this rule is to enable the court and opposing counsel to efficiently and expeditiously review the accuracy of the factual statements made in the briefs. *Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999). We disregard any alleged facts not supported by the record. *Lemond v. Dep't of Licensing*, 143 Wn. App. 797, 807, 180 P.3d 829 (2008).

Felix argues that the trial court violated her right to a fair trial and due process because it made "comments at the September 2015 hearings indicating the judge had decided the case prior to hearing testimony." Br. of Appellant at 25. She does not indicate which specific comments she challenges. We are not required to search the record to locate the portions relevant to a litigant's arguments, and we decline to do so with respect to these arguments. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). In addition, "parties raising constitutional issues must present considered arguments to this court. . . . '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *City of Tacoma v. Price*, 137 Wn. App. 187, 200-01, 152 P.3d 357 (2007) (quoting *State v. Johnson*, 119, Wn.2d 167, 171, 829 P.2d 1082 (1992)). We decline to consider this issue.

II.     EVIDENTIARY CHALLENGES

Felix assigns error to the trial court's refusal "to enter evidence into the exhibit list" and "to [allow] witness(s) to speak about abuse within the home of the father despite that the evidence pertaining to the adequate cause which is the reason why the [trial] was initially started." Br. of Appellant at 4. We do not consider these issues.

Felix provides no citation to the record or authority for either of these assignments of error. Because Felix provides no substantive argument on these assignments of error, we do not consider

them. RAP 10.3(a)(6); *In re Marriage of Fahey*, 164 Wn. App. 42, 59, 262 P.3d 128 (2011). As stated above, we are not required to search the record to locate the portions relevant to a litigant's arguments, and we decline to do so with respect to these arguments. *Cowiche Canyon*, 118 Wn.2d at 819.

III.   RELOCATION

Felix argues that the trial court erred by granting the relocation and entering the new parenting plan because substantial evidence did not support the decision. We disagree.

A.   LEGAL PRINCIPLES

Washington's Child Relocation Act provides procedural and substantive rules for a primary custodial parent to relocate the children. RCW 26.09.405–.560; *In re Custody of Osborne*, 119 Wn. App. 133, 140, 79 P.3d 465 (2003). "If a person entitled to residential time or visitation objects to a child's relocation, the person seeking to move the child may not relocate the child without court approval." *In re Marriage of McNaught*, 189 Wn. App. 545, 553, 359 P.3d 811 (2015), *review denied*, 185 Wn.2d 1005 (2016).

RCW 26.09.520 provides the framework under which a court must decide if a parent can relocate the children. First, the person proposing the relocation must provide his or her reasons for the intended relocation. RCW 26.09.520. There is a rebuttable presumption that the intended relocation will be permitted. RCW 26.09.520. The basis for this "'presumption'" is that a "'fit parent will act in the best interests of [his or her] child.'" *In re Marriage of Horner*, 151 Wn.2d 884, 895, 93 P.3d 124 (2004) (quoting *Osborne*, 119 Wn. App. at 144). A party may object to the relocation by demonstrating that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person" based on consideration of 11 child relocation factors. RCW 26.09.520. "Upon a proper objection, a trial court must conduct a fact-finding

hearing on the proposed move." *McNaught*, 189 Wn. App. at 553. The person opposing the relocation must rebut the presumption by a preponderance of the evidence. *McNaught*, 189 Wn. App. at 553-54.

A trial court has discretion to grant or deny a relocation after considering all 11 relocation factors contained in RCW 26.09.520. *Horner*, 151 Wn.2d at 894; *Fahey*, 164 Wn. App. at 56. We defer to the trial court's relocation ruling unless it is an abuse of discretion. *Horner*, 151 Wn.2d at 893. A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Horner*, 151 Wn.2d at 893.

The relocation factors are not weighted and no inference is to be drawn from the order in which they are listed, include:

> (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191 [which limits residential time if the parent has engaged in willful abandonment, abuse, domestic violence or assault];
> (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
> (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
> (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.[2]

RCW 26.09.520.

"When considering whether a trial court abused its discretion by allowing relocation, we first look to see if the trial court entered specific findings of fact on each factor." *Bay v. Jensen*, 147 Wn. App. 641, 655, 196 P.3d 753 (2008). "The trial court must enter specific findings on each factor, or parties must have presented substantial evidence on each factor with the trial court making findings and oral articulations that reflect its consideration of each." *McNaught*, 189 Wn. App. at 556. The trial court abuses it discretion when it fails to consider each factor or satisfy either method of documenting its consideration of the factors. *McNaught*, 189 Wn. App. at 556; *Bay*, 147 Wn. App. at 655.

We uphold trial court findings that are supported by substantial evidence. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). We review conclusions of law to determine whether factual findings that are supported by substantial evidence in turn support the conclusions. *In re Marriage of Myers*, 123 Wn. App. 889, 893, 99 P.3d 398 (2004).

B.    SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDINGS ON FACTORS

The trial court heard testimony on each of the factors from both the parents and the GAL. The trial court filed written findings on the each of the relocation factors. In addition, in its oral

---

[2] The eleventh factor is not relevant to this case since it does not involve a temporary relocation.

ruling, the trial court articulated its consideration of each of the factors. We view the written order as implicitly embodying any findings made by the court, and we look to the oral ruling, which was consistent with the written order, to help interpret these implicit findings. *In re Marriage of Kimpel*, 122 Wn. App. 729, 735, 94 P.3d 1022 (2004). Accordingly, we must determine whether substantial evidence supported each factor and reflected its consideration of each in its findings. *McNaught*, 189 Wn. App. at 556.

Felix does not assign error to any of the trial court's findings in its order, rendering them verities on appeal. *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 100, 11 P.3d 726 (2000).

We have reviewed the record and conclude that substantial evidence supports each of the trial court's findings of fact on every relocation factor. In addition, the trial court's conclusions of law allowing the relocation are supported by its findings of fact. The trial court did not abuse its discretion.

## IV.  MODIFICATION

Felix also challenges the trial court's denial of her petition for a major modification of the parenting plan and its denial to make her the primary custodial parent. The trial court did not abuse its discretion.

### A.  LEGAL PRINCIPLES

We consider a challenge to a modification ruling for abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. *In re Marriage of McDevitt*, 181 Wn. App. 765, 769, 326 P.3d 865, *review denied*, 181 Wn.2d 1018 (2014). There is a strong presumption against modification. *McDole*, 122 Wn.2d at 610.

10

RCW 26.09.260 governs modification of a parenting plan. Subsection (1) and (2)(c) state:

(1) Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court *shall not modify* a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

. . . .

(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

. . . .

(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

(Emphasis added).

In a relocation case, it is not necessary for the court to consider whether substantial change in circumstances exist other than the relocation itself, or to consider the factors contained in RCW 26.09.260(2). *In re Marriage of Raskob*, 183 Wn. App. 503, 513, 334 P.3d 30 (2014).

The best interests of the child are served by "parenting arrangement[s] that best maintain a child's emotional growth, health and stability, and physical care." RCW 26.09.002. The "best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." RCW 26.09.002.

Because the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by Littlefield*, 133 Wn.2d 39).

11

B.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Felix moved for a major modification based on an allegation that Santiago abused the children. Felix testified that she believed that the primary person taking care of the children was Santiago, not Melendez.

Bartholomew testified that the only applicable modification factor involved whether the children's present environment was detrimental to the children's physical, mental, or emotional health, and whether the likely harm to be caused by a change was outweighed by the advantage of a change. He focused on this factor because of Felix's allegations of abuse by Santiago. Bartholomew testified that the children reported to their counselors that Felix told them that Santiago was mean to them and that Melendez does not love them. However, when Bartholomew spoke with the children they could not provide him with details of any abuse. They responded, "Well, that's what mom told us." 1 RP at 28. Bartholomew did believe that Santiago had been "rougher with [one of the children]" but not to the level of abuse. 1 RP at 28. CPS determined any referrals were either "unfounded" or it did not require an investigation. 1 RP at 28.

Bartholomew opined no grounds for a modification of the parenting plan existed, and that there was no abuse in either household. When Bartholomew observed the children in Melendez's home, the children were very comfortable with Santiago. In addition, the children's counselor also expressed an opinion that the children were comfortable with Santiago when she attended their counseling sessions.

The trial court denied Felix's petition for modification at the same hearing it permitted the permanent relocation of the children, and entered a new parenting plan.

We conclude that the trial court did not abuse its discretion by denying Felix's petition for modification.

V.      MOTION FOR RECONSIDERATION

Felix argues that the trial court erred by denying her motion for reconsideration because she submitted new evidence. We disagree.

A.      STANDARD OF REVIEW

We review a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 752 n.1, 162 P.3d 1153 (2007). A trial court's decision is an abuse of discretion if it is manifestly unreasonable or based on untenable grounds or reasons. *Horner*, 151 Wn.2d at 893. The decision is "'manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the legal standard.'" *Horner*, 151 Wn.2d at 894 (quoting *Littlefield*, 133 Wn.2d at 47). Thus, the court must base its decision on the correct legal standard and correctly apply that standard to the facts, which in turn must be supported by the record. *Horner*, 151 Wn.2d at 894.

B.      THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Felix filed her motion for reconsideration under CR 59(a)(4), which allows for a motion's reconsideration based on "[n]ewly discovered evidence . . . which the party could not with reasonable diligence have discovered or produced at trial."

The trial court denied Felix's motion for reconsideration without oral argument because none of the allegations raised by Felix constituted newly discovered evidence under CR 59. The trial court stated in its order that one document submitted had been offered at trial by Felix and admitted.

The trial court thought that another document Felix relied on in her motion, an e-mail from Santiago, had been admitted as a trial exhibit. However, the trial court was mistaken. The e-mail

was written to "serve[ ] as a record of what happened" on that same evening when Melendez called the police, but this was not determined to be newly discovered evidence either. CP at 427.

Felix also alleged that she had newly discovered evidence on a cult with which Melendez had involvement. However, the trial court ruled that Felix knew about Melendez's involvement with this organization at the time of trial.

Because the trial court properly found none of the information Felix alleged in her motion for reconsideration constituted newly discovered evidence under CR 59, it did not abuse its discretion in denying the motion.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

Melnick, J.

We concur:

Maxa, A.C.J.

Maxa, A.C.J.

Lee, J.