IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parentage of R.J. | No. 85747-9-I |
| ROB L. JACOBS, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| GALE ELIZABETH MCARTHUR, | |
| Appellant. | |

HAZELRIGG, A.C.J. — Gale McArthur appeals from an order finding her in contempt of the parenting plan she entered into with Rob Jacobs in June 2023. She asserts that evidentiary errors, misapplication of the controlling law, and violation of her due process rights require reversal. She also assigns error to the fee award. We disagree and affirm.

FACTS

Rob Jacobs and Gale McArthur have a child in common, R.J. They entered into a parenting plan in June 2023, when R.J. was three years old, after mediation. Their parenting plan provides for equal residential time and expressly includes provisions that address the use of social media and derogatory comments about the parents:

> Social Media. The Child's social media shall be either not permitted
> or by agreement permitted with equal access by both parents.

> Neither parent shall make any remarks about the other parent on their or the Child's social media platform. Nor shall the parties allow any third party to create a social media profile for the child or make negative remarks about either party.
>
> . . . .
>
> Derogatory Comments. Neither parent shall make derogatory comments about the other parent or allow anyone else to do so in child's presence. Neither parent shall allow or encourage to make derogatory comments about the other parent.

(Boldface omitted.) The parenting plan also orders mediation to resolve any disputes that arise.

In July 2023, Jacobs filed a motion for contempt based on McArthur's alleged violation of the parenting plan. Jacobs averred that McArthur had posted about Jacobs from R.J.'s social media account and in those posts she "made several derogatory accusations and statements" against him. Jacobs' motion was accompanied by a declaration with an appended exhibit containing screenshots of the social media posts in question. The court issued an order to show cause and set a hearing.

In August 2023, McArthur responded with her own pro se motion, which asked the court to vacate the show cause order, compel mediation, and impose CR 11 sanctions against Jacobs. Simultaneously, McArthur filed a "Strict Reply and Declaration of Gale E. McArthur to Petitioner's Non-Response and Request for Default Order" and a motion to revise the earlier show cause order, as well as other materials that were not transmitted to this court in the record on appeal.

The parties appeared before a court commissioner on August 29, 2023 for a hearing on Jacobs' motion for contempt; Jacobs was represented by counsel and McArthur appeared pro se. The commissioner heard argument from both

sides and addressed various related issues and arguments that McArthur raised. At the end of the hearing, the commissioner found McArthur in contempt.

The commissioner found that "[b]ased on the language in the FaceBook[1] post, it could not possibly be any clearer that [McArthur] explicitly attempted to condition one aspect of the Parenting Plan (the prohibition on posting negative statements about the petitioner on the child's social media page) upon another condition." This written finding was consistent with her oral ruling that "attempting to condition one aspect of the parenting plan on another is the basis for contempt [under RCW 26.09.160]. And again, here it was—it was very—it was very blatant."[2] McArthur moved for both revision and reconsideration of the contempt order and both motions were denied.

McArthur timely appealed.

ANALYSIS

I.    Evidence Supporting Order on Contempt

McArthur devotes two separate sections of her opening brief to the contempt finding and, as the issues therein are intertwined, they are logically addressed together. First, she alleges that the commissioner relied on "inadmissible hearsay evidence and unauthenticated documents," because the images of the social media post "lacked a timestamp or any authentication." Later in her briefing, McArthur asserts that the contempt finding was "based on inadequate evidence," because the evidence presented did not support a finding

---

[1] An Internet-based social media and social networking service.
[2] The commissioner expressly adopted and incorporated her oral rulings in the written order.

of a willful violation of the parenting plan or that the "violation substantially hindered the execution of the plan" as required by the contempt statute.

In reply, Jacobs argues that the contempt finding was supported by sufficient evidence that established McArthur had attempted to condition performance of one part of the parenting plan on the performance of another, one of the explicit bases for a contempt finding under the statute. He further asserts that the finding that McArthur had acted in bad faith, and was therefore in contempt, was supported by the signed declarations of both parties submitted to the court under threat of perjury. In particular, he points to McArthur's admission on her own social media page that she had made the post on R.J.'s page, which Jacobs included as an exhibit to his declaration in strict reply in support of his contempt motion.[3]

RCW 26.09.160(1) authorizes contempt proceedings for failure to follow a parenting plan and explains that

> [a]n attempt by a parent, in either the negotiation or the performance of a parenting plan, to condition one aspect of the parenting plan upon another, . . . or to hinder the performance by the other parent of duties provided in the parenting plan, shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

"In a contempt case the trial court balances competing documentary evidence, resolves conflicts, weighs credibility, and ultimately makes determinations regarding bad faith." *In re Marriage of Williams*, 156 Wn. App. 22, 28, 232 P.3d

---

[3] R.J. was 3 years old at the time of the contempt hearing. It is unclear from the record who established the page on behalf of the toddler, but the parties do not appear to dispute that McArthur had access to it, including the ability to post.

573 (2010). In the context of a parenting plan, the parent seeking the contempt finding must establish bad faith by a preponderance of the evidence. *Id.* ER 901(a) states that a document can be authenticated by "evidence sufficient to support a finding that the matter in question is what the proponent claims." Additionally, a statement is not hearsay if it is "offered against a party and . . . is the party's own statement, in either an individual or representative capacity." ER 801(d)(2). We review contempt findings for substantial evidence. *In re Marriage of Rideout,* 150 Wn.2d 337, 351, 77 P.3d 1174 (2003).

Here, the commissioner relied on the signed declarations of both parties and the various materials each provided in advance of the hearing to reach the contempt finding. McArthur appeared at the hearing pro se and both provided her own narrative argument and answered the procedural questions of the court. However, the court was clear that it was not considering McArthur's argument as testimony because it was not offered under oath. McArthur challenges the sufficiency of the evidence on which the commissioner's ruling rests. However, a preponderance of the evidence is the lowest standard of proof applied in our courts and only requires a showing that the proposition is more probably true than not. *In re Dep. of H.W.*, 92 Wn. App. 420, 425, 961 P.2d 963 (1998); *In re Custody of C.C.M.* 149 Wn. App. 184, 202, 202 P.3d 971 (2009) (describing standard as "low end of the protective spectrum").

The commissioner's order quoted the following from the offending social media post in support of the finding that McArthur had conditioned one aspect of the parenting plan upon another:

> Dad [(Jacobs)] isn't following his PP [(Parenting Plan)] agreement, refusing mediation to discuss WHY he has a new lady in our house, *so we'll let this sit here until he follows the PP. . .*
>
> The PP also says no social media. *So until Dad gets his a\*\* back into mediation* like PP says over this new living situation . . . *then we 'll let this sit right here*.

(Most alterations in original.) The commissioner found that McArthur "clearly understood that she was posting on FaceBook in violation of the Parenting Plan and did so expressly because she was upset that [Jacobs] would not agree to mediation and/or to put pressure on him to attend mediation." The commissioner noted the offending post was only up for a limited period of time and questioned Jacobs about the screenshots he offered as proof. While she was not under oath, McArthur began her substantive argument to the court by effectively admitting that she made the post.

> [THE COURT:] All right, Ms. McArthur, whenever you're ready, why don't you go ahead and I will stop you when you are at time.
>
> [McARTHUR]: I'd like to start with [the] Facebook posting, July 15th. I apologized for my posting.
> . . . .
> Those posts could reflect bad on me in the long term. Please accept my apologies, and I will stay off social media for a while.

She further corrected Jacobs as to the date the post was made and offered, "I can show the court."

By proffering the screenshots of the social media post in question with a signed declaration under the threat of perjury, Jacobs acted to authenticate the document pursuant to ER 901. Because Jacobs offered McArthur's own statement against her, it was not hearsay under ER 801. The commissioner also credited

- 6 -

the explanation Jacobs provided that addressed the absence of any date on the post; he had received it from a third party before the post was taken down. Jacobs took the necessary steps to authenticate the evidence of the post he provided to the court such that it was admissible. The documentary evidence provided by the parties, and McArthur's answers to the court's questions about the period of time the post in question was online, satisfy the low evidentiary standard of proof applicable here. More critically, the content of the post itself establishes that McArthur's violation of the plan by means of the social media post was intended to coerce Jacobs into attending mediation over other grievances. Accordingly, there was sufficient admissible evidence to support the commissioner's finding of contempt against McArthur.

II.     Purported Due Process Violations at Show Cause Hearing

McArthur next alleges that her due process rights were violated when the commissioner "did not allow her to present oral testimony or secure legal representation" during the contempt proceedings. Jacobs responds that we need not consider this assignment of error because "this argument can be disposed of on the basis that the facts she alleges are misrepresentations." This assignment of error fails for two separate procedural reasons. First, Jacobs is correct that it is premised on assertions that are not borne out in the report of proceedings. Second, while McArthur cites case law in support of this challenge, she fails to identify the relevant test for an alleged due process violation, much less apply it to the facts of her case. Because we do not consider claims that are insufficiently argued or are unsupported by facts in the record, we decline to consider this issue

further. RAP 10.3(a)(6); *see also In re Vulnerable Adult Petition of Winter*, 12 Wn. App. 2d 815, 835, 460 P.3d 667 (2020).

III.    Fee Award

McArthur claims that the trial erred "by imposing punitive fees of $3,500 without including a purge clause in the contempt order, thereby rendering the order punitive rather than remedial." She asserts that a purge clause is "essential as it provides the contemnor with a clear path to comply with the order and avoid further sanctions." In reply, Jacobs contends that the award of fees was proper under RCW 26.09.160, which authorizes an award of reasonable attorney fees to the aggrieved party who prevails on a contempt motion. Jacobs also contends that a purge clause was not required because the commissioner's award was intended to compensate him for the time and expense incurred while pursuing the contempt motion against McArthur.[4]

Attorney fees in contempt actions are authorized under RCW 26.09.160. We review a fee award for abuse of discretion when awarded pursuant to a statute. *Bay v. Jensen*, 147 Wn. App. 641, 659, 196 P.3d 753 (2008). "The party challenging the award must show the court used its discretion in an untenable or manifestly unreasonable manner." *Id.* McArthur devotes a significant portion of her briefing on this issue to the purge clause and references subsequent

---

[4] Contrary to McArthur's argument on this issue, the contempt order she appeals does, in fact, contain a purge clause. Section 11 of the order expressly states that:
Contempt can be corrected (purged) if:
. . . Gale E. McArthur does the following . . .:
Refrains from posting anything further on the child's social media pages about the Petitioner or the case and refrains from making any further derogatory comments to and against the Petitioner.

proceedings on reconsideration and revision. However, those hearings and decisions are outside the scope of our review as the orders were not designated in McArthur's October 4, 2023 amended notice of appeal. More critically, she appears to assert that the absence of a purge clause renders the fee award improper, but also notes that

> RCW 7.21.030[] permits the imposition of remedial sanctions, including attorney's fees, only if a valid finding of contempt has been made. Remedial sanctions are intended to be coercive, designed to compel compliance with a court order.

This is an accurate statement of the law. However, the court's fee award here was not based on RCW 7.21.030. Review of the report of proceedings makes clear that the commissioner expressly declined to award fees as a sanction for McArthur's contempt. As such, a purge condition was not required.

The award of attorney fees was simply based on the plain language of RCW 26.09.160(2)(b)(ii) which states in relevant part, "Upon a finding of contempt, the court *shall* order . . . [t]he parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance." (Emphasis added.) The court found McArthur in contempt. The unambiguous language of the statute required an award of attorney fees to Jacobs as the moving party. The trial court did not err when it ordered McArthur to pay the attorney fees Jacobs incurred as a result of bringing the motion for contempt.

IV. Attorney Fees on Appeal

Jacobs seeks an award of attorney fees on appeal and properly both provides authority and devotes a portion of his briefing to his request as required

by RAP 18.1(b). He offers *Rideout* for the proposition that "a party is entitled to an award of attorney fees on appeal to the extent the fees relate to the issue of contempt." 150 Wn.2d at 359. In *Rideout*, our Supreme Court read RCW 26.09.160(2)(b)(ii) as authorizing an award of attorney fees on appeal because they are included under "'all court costs and reasonable attorney fees incurred as a result of the noncompliance.'" *Id.* at 358 (emphasis omitted) (quoting RCW 26.09.160(b)(ii)). Thus, Jacobs is entitled to attorney fees on appeal, subject to his compliance with the procedural requirements under RAP 18.1.

Affirmed.[5]

WE CONCUR:

---

[5] McArthur attempts to supplement the record on appeal by appending various documents to her briefing, contrary to RAP 10.3(a)(8) and without seeking permission of the court as required by RAP 9.11(a). Further, her reply brief argues a number of matters not presently before this court. We decline to consider materials or argument outside the scope of appeal as established by the notice of appeal and assignments of error.