IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE | ) | |
| OF JESSICA N. ROBINSON, | ) | No. 35647-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| RYAN M. ROBINSON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Ryan Robinson appeals the trial court's order allowing Jessica

Robinson's relocation with the former couple's children. Ryan also appeals the denial of

his petition to modify the parenting plan and custody order. He argues that the trial court

erroneously applied the child relocation act and its presumption when it modified the

parties' parenting plan. We reject his contentions and affirm the trial court's relocation

decision.

FACTS

In November 2014, Ryan Robinson and Jessica Robinson divorced. At the time of

their separation, the couple raised a five-year-old child and a three-year-old child. Both

parents then resided in Auburn. The 2014 parenting plan allowed for the minor children

to "resid[e] with each parent for one (1) week with the exchange taking place on Monday at 6:00 p.m." Clerk's Papers (CP) at 2. Despite this language of equal residential time, the plan designated Jessica the custodian of the children with the children scheduled to reside with her the majority of the time.

On April 19, 2017, Jessica Robinson told and texted Ryan of a new job opportunity in Goldendale. Jessica stated her intent to move to the Klickitat County town. Ryan did not object. He did not demand written notice. According to Jessica, she relied on Ryan's failure to object when relocating. Jessica and the children moved to Goldendale on May 1, 2017. RP 70.

PROCEDURE

On June 19, 2017, Ryan Robinson filed an objection to Jessica's relocation and petitioned to change the parenting plan and custody order. On August 1, 2017, the trial court held an evidentiary hearing on whether to permit Jessica Robinson to relocate with the parties' two minor children. Both Ryan and Jessica testified at the hearing. Jessica's mother and grandmother, both of whom sometimes care for the children in Goldendale, also testified.

At the evidentiary hearing, Jessica Robinson testified, in part:

> And the children remained in full custody with me until the early 2016, when we decided to go back to a 50/50 schedule. The 50/50 schedule was not Monday through Monday type schedule, it was the Respondent received the boys Sunday through Wednesday and I received the boys Wednesday evenings through Sunday. And then —

2

. . . .

THE COURT:  So, the 50/50—you feel like there's a 50/50 schedule at this time or the parties had been in the 50/50 before you moved, is that what you're saying?

MS. ROBINSON:  Correct, that is correct.

THE COURT:  Okay.  Because Sunday night, Monday night and Tuesday night is three nights.  Wednesday to Sunday is four nights.  So, are—who—do you want to summarize the nights?

MS. ROBINSON:  Correct.  It was Wednesday evenings they came back to me and then I returned them to Ryan on Sunday evenings.  So, it was basically—on the Wednesday evenings, it was an after-school when we would make the switch.

THE COURT:  So, Wednesday evening to Sunday evening and then Sundays to Wednesdays?

MS. ROBINSON:  Correct.

THE COURT:  So, it is—am I mistaken saying that's three days, three nights with Dad and four nights with Mom?

MS. ROBINSON:  I would have calculated more like at 3.5.  We were trying to make it even.

THE COURT:  Okay.  Well, if you were, your dates aren't matching up, that's all.  It doesn't appear to me, but that could be me and my math—I don't think so.  So, Wednesday evening to Sunday evening—or Wednesday after school?

MS. ROBINSON:  It was going into Wednesday evening, but we would wait until the kids had gone after school.

THE COURT:  Okay.  So, what time would you say?

MS. ROBINSON:  About 7:00.

THE COURT:  Okay.  Wednesday at 7:00—

MS. ROBINSON:  To Sunday at 7:00.

THE COURT:  —Thursday, Friday, Saturday to Sunday at 7:00, 6:00?

MS. ROBINSON:  Correct.

THE COURT:  Okay.

MS. ROBINSON:  So, four days.

THE COURT:  If you say 3.5, whatever.  I'm just trying to—I want you to tell me.  I'm not trying to be the person asking all the questions, I just need information.

MS. ROBINSON:  So, four days with me, three days with their father, Ryan.

No. 35647-7-III
*In re Marriage of Robinson*

Report of Proceedings (RP) at 13, 16-18.

The trial court granted Jessica Robinson's request to relocate and denied Ryan's petition to change the parenting plan. As part of its ruling, the trial court reviewed the eleven factors listed in the child relocation act and entered findings of fact relevant to the factors. The unnumbered findings read, in part:

> Both parents had encountered difficulties at work due to the needs of the children. The mother was terminated from her prior employment based on excessive absences due to the children, and the father's current spouse reduced her hours at work to accommodate the children's need.
> Based on the testimonies of the mother, her mother and grandmother, the two children need consistency and personal attention, and they are both doing well in Goldendale. The mother's preparedness and the level of detail was also shown at the hearing, she had demonstrated that she will be able to better address the children's specific needs, such as treating the children's ADHD, including situations when they react aggressively towards other children, or providing additional educational support when needed. . . .
> The father had submitted a proposed Parenting Plan that obviously he had not read and his inconsistent statements, declaration, and live testimony show that he does not take the time to be consistent or accurate for the court. Therefore, this court is concerned how he would follow through on the children's schooling, receiving medical care, and other matters requiring consistent behaviors if he were the primary care provider.
> The children's great-grandmother, Monica Lawson, testified as to her training and experience with young children and the level of activities they do while their mother is at work. Such activities included visits to parks, library, observatory, physical activities, science projects, VBS, and daily reading school workbooks for 30 minutes per day. Since the mother lives near her parents and grandmother and aunt and uncle, the children were often able to visit with relatives.
> . . . .
> The mother texted and orally advised the father of her new job opportunities on or about April 19, 2017, and the father did not object at

4

that time. His failure to object or request that she provide a written notice of intent to relocate resulted in the mother's relying on his tacit approval, accepting the job, and moving to Goldendale. It was not until he mailed her an objection to her relocating several months later was she apprised of his true intentions. The father's failure to make any objections until after she accepted the job and moved was not made in good faith.

. . . Disrupting the children's contact with the moving parent . . . would . . . be more harmful to them than disrupting their contact with the non-moving parent.

The original Parenting Plan provided for a 50/50 plan alternating each week; however, prior to the mother's securing employment and moving to Goldendale to be closer to her work, the children had resided primarily with her from Wednesday to Sunday each week and with the father from Sunday to Wednesday.

The father stated under oath that the children lived with him from Monday to Friday each week for the last three years; however, in his written statement . . . filed with DSHS dated March 7, 2016, when the mother was requesting TANF and assistance for medical and daycare, he stated they had shared custody and that the children were living with him from Sunday to Wednesday each week.

The father's own proposed Parenting Plan and testimony at the hearing show that the children should remain with the mother from Monday to Friday each week if she would not choose to relocate.

. . . .

The reasons for moving were given in good faith.

After mother lost her job while living in Auburn, she obtained her AA degree in accounting and secured a job based on a reference from her mother. This job required that she relocate, and there was no information provided that she accepted this job to take the children away from their father, and she has gone to significant lengths to assure that the children continue to see their father.

The mother's employer also allows her flexible hours to work some days from home.

. . . The reasons for objecting to the move . . . were not given in good faith.

. . . .

Both children are quite young and do not have significant relationships with anyone in Auburn other than the father and his new wife and several classmates near the father's home. There is a concern that due

5

> to the children's ADHD, they may need more individualized attention, and they should be able to receive such attention from the local schools and from the children's mother, grandmother and great-grandmother. . . .
>
> . . . .
>
> The parties will be living approximately 212 miles apart (Google Maps). This will cause significantly more travel time for the parties and their children than traveling between their respective homes in Auburn. However, since both parties are working, the actual transportation costs should be affordable.

Clerk's Papers (CP) at 51-53.

After the trial court's order permitting relocation, Ryan Robinson moved for reconsideration. He contended that Jessica needed to file and serve a petition for modification of the parenting plan and to demonstrate adequate cause before the trial court would address relocation. The trial court denied Ryan's motion for reconsideration because he raised a new argument with his motion.

## LAW AND ANALYSIS

Ryan Robinson assigns error to three findings of fact stated above. Nevertheless, Ryan fails to address any of the findings in his argument section of his appellate brief. He fails to address whether evidence supported the findings.

An appellant's brief must demonstrate why specific findings of the trial court are not supported by the evidence and cite to the record in support of that argument. *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). In the absence of a clear challenge, we treat findings of fact as verities on appeal. *In re Estate of Palmer*, 145 Wn. App. 249, 265, 187 P.3d 758 (2008). Therefore, we do not review the validity of the

6

Robinsons' trial court's findings of fact.

Ryan Robinson principally challenges the trial court's application of the presumption in favor of relocation, under the child relocation act, afforded to the parent who resides with the children the most. He contends that the children spent as much time with him before Jessica's relocation to Goldendale. We reject Ryan's contention because the trial court entered a finding of fact that the children spent more time with Jessica.

This court reviews a trial court's relocation decision for abuse of discretion. *In re Marriage of Jackson*, 4 Wn. App. 2d 212, 217, 421 P.3d 477 (2018). A trial court abuses its discretion when the court's decision is manifestly unreasonable or bases its decision on untenable grounds or reasons. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). An abuse of discretion can occur when a trial court applies an incorrect legal standard, substantial evidence does not support its findings, or the findings do not meet the requirements of the correct standard. *In re Marriage of Jackson*, 4 Wn. App. 2d at 217.

Washington's child relocation act is codified at RCW 26.09.405-.560. The act imposes notice requirements and sets standards for relocating children who are the subject of court orders regarding residential time. *In re Custody of Osborne*, 119 Wn. App. 133, 140, 79 P.3d 465 (2003). The act provides:

> a person with whom *the child resides a majority of the time* shall notify every other person entitled to residential time or visitation with the child under a court order if the person intends to relocate.

7

RCW 26.09.430 (emphasis added).  If a person entitled to residential time objects, the person seeking to relocate the child may not relocate without a court order.  RCW 26.09.480(2).  In turn, RCW 26.09.520 declares in part:

> The person proposing to relocate with the child shall provide his or her reasons for the intended relocation.  There is a rebuttable presumption that the intended relocation of the child will be permitted.  A person entitled to object to the intended relocation of the child may rebut the presumption by demonstrating that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon the following factors.

Courts read the two statutes together to afford the presumption only for the parent with whom the child resides a majority of the time.  *In re Marriage of Jackson*, 4 Wn. App. 2d at 213-14 (2018); *In re Marriage of Fahey*, 164 Wn. App. 42, 56-58, 262 P.3d 128 (2011); *In re Parentage of R.F.R.*, 122 Wn. App. 324, 328-29, 93 P.3d 951 (2004).

After the hearing on relocation, the trial court has the authority to either allow or disallow a person to relocate the child based on an overall consideration of the best interests of the child.  RCW 26.09.420; *In re Parentage of R.F.R.*, 122 Wn. App. at 329.  This court reviews the trial court's decision for abuse of discretion.  *In re Parentage of R.F.R.*, 122 Wn. App. at 329.

Although the 2014 parenting plan equally divided residential time of the two children with the respective parents, Ryan Robinson relies on the fact that, in practice, he and Jessica shared equal time.  This division of the Court of Appeals follows the rule that

RCW 26.09.430 affords the presumption in favor of relocation only to a parent with whom the child primarily resides, not to the parent named by the parenting plan as the custodial parent or the parent designated by the plan as having primary residential placement. Thus, we would not grant the presumption to a parent who shares equal residential time with the other parent.

Ryan Robinson emphasizes Jessica's evidentiary hearing testimony that, beginning in early 2016, the parties shared a "50/50 schedule." RP at 13. Ryan fails to note that immediately thereafter Jessica added the children stayed with her Wednesday night through Sunday night and with Ryan Sunday night to Wednesday night. According to this testimony, the children resided with Jessica four days a week or a majority of the time.

The trial court found that the children stayed with Jessica Robinson from Wednesday night through Sunday night. Ryan does not argue that substantial evidence does not support this finding. Ryan does not argue that the trial court could accept Jessica's version of the facts concerning the actual days of custody over Jessica's comment that the parents split time with the children fifty-fifty. Therefore, we conclude that the trial court properly applied the presumption of relocation in favor of Jessica.

Ryan Robinson also assigns error to the trial court's denial of his motion for reconsideration. By the motion, Ryan contended that Jessica needed to file a petition to

9

modify the parenting plan and show adequate cause before proceeding to a relocation hearing. Nevertheless, Ryan failed to raise this contention at the evidentiary hearing.

CR 59(a) recognizes nine specific grounds that a party may use when seeking reconsideration of a judgment. Ryan Robinson failed to identify any of the nine grounds to support his motion for reconsideration. Furthermore, CR 59 does not permit a party to propose new theories of the case that could have been raised before entry of an adverse decision. *Wilcox v. Lexington Eye Institute*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005); *International Raceway, Inc. v. JDFL Corporation*, 97 Wn. App. 1, 7, 970 P.2d 343 (1999).

Ryan Robinson contends that this court should reject the trial court's decision denying his motion for reconsideration because both parties appeared pro se and the court should not have expected him to comprehend the finer details of the child relocation act and modification of child custody statutes. Contrary to Ryan's assertion, pro se litigants are bound by the same rules of procedure and substantive law as attorneys. *Holder v. City of Vancouver*, 136 Wn. App. 104, 106, 147 P.3d 641 (2006); *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

CONCLUSION

We affirm the trial court's order permitting Jessica Robinson's relocation with the children to Goldendale.

No. 35647-7-III
*In re Marriage of Robinson*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

11